**People of the State of Illinois, Appellee, v. Matthew Mills, Appellant.**

**Gen. No. 51,759.**

First District, First Division.

July 22, 1968.

<br>

Sam Adam, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert B. Rosen, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Matthew Mills, was indicted on the charge of knowingly possessing heroin in violation of chapter 38, section 22–3 of the Illinois Revised Statutes (1963). The cause was submitted to the trial court after the defendant had waived a jury trial. The trial judge found the defendant guilty as charged, and having denied defendant's motions for a new trial and in arrest of judgment, sentenced the defendant to the Illinois State Penitentiary for a term of not less than three (3) and not more than eight (8) years. The defendant appeals from the judgment entered on the finding of guilty.

The defendant, seeking a reversal of the judgment entered, contends on appeal: (1) that there was no probable cause for his arrest, and (2) that he was not proved guilty of the offense charged beyond a reasonable doubt.

Prior to trial, a hearing was conducted on defendant's written motion to suppress evidence. At this pretrial session, Police Officer George Barzydlo testified that prior to commencing his patrol activities on December 12, 1965, he and his partner, Robert Finger, had been told by their supervising sergeant to be on the lookout for a particular kind of criminal activity. Barzydlo further testified that this activity involved a large number of cabdriver robberies. "The person who was committing these cab robberies was following a pattern of taking a cab from 50th and State to 39th and State where he held up the cabdriver; this same person would take a cab back south, either on Wabash or Michigan, and also hold up the cabdriver when he reached the 5000 area." At about 8:15 p. m., on December 12th, Barzydlo received a message over his police car radio to proceed to 43rd and Wabash where a cabdriver had

been robbed. When Barzydlo and his partner arrived at the scene of the crime the victim gave them a general description of his assailant, "The description was that of a male Negro about 30 to 40 years old, between 5-9 and 5-11, 145 to 165 pounds, medium complexion and wearing a dark hat and a dark coat." Shortly thereafter, Barzydlo received the same description of the robber over his radio. Barzydlo and Finger then began to "tour" the area in which the robbery had taken place.

At about 8:25 p. m. the two officers observed a yellow cab proceeding southward on South Parkway at 41st Street. Officer Barzydlo concluded that the passenger in the back seat of the cab, who turned out to be the defendant, matched the description he had previously been given in that "the person appeared to me to be between 5-10 and 6 foot, of medium build and was wearing dark clothes." Barzydlo activated the blue light on the top of the police car and the cab immediately pulled over to the side of the road. While the cab was pulling over, Barzydlo turned the car's spotlight to the back window of the cab. According to Barzydlo, the defendant then raised his body up and made a "twisting motion" over to the right side of the cab's rear seat where he slumped down. The police car pulled up about ten feet behind the cab, and the officers ordered the driver and the defendant to get out. The defendant was searched, and nothing of an incriminating nature was found on his person. Officer Barzydlo then proceeded to search the taxi where he found a plastic pouch containing a white powder, said pouch being the object of defendant's motion to suppress.

Upon the conclusion of Barzydlo's testimony, and after hearing argument from respective counsel, the trial judge stated that under the totality of the circumstances the officers had possessed probable cause for their arrest of the defendant and their subsequent search of the taxi-

cab. Therefore, he denied defendant's motion to suppress the pouch that had been found in the rear of the cab.

At the trial, Officer Barzydlo repeated in substance the testimony he had previously given at the pretrial hearing on defendant's motion to suppress. He further testified that he had found the pouch (which was stipulated by the parties to contain heroin) wedged down at the extreme right side of the rear seat of the taxicab, at a spot adjacent to where the defendant had slumped down when the police car's spotlight had been directed into the cab.

Lee Porter, the driver of the cab in question, a witness called on behalf of the State, testified that he had no knowledge concerning the heroin found in his cab. He further testified that he had five or six fares on the evening of December 12th prior to his being hailed by the defendant, and that some of these fares had included more than single passengers.

The defendant contends that the police officers did not have probable cause to arrest him; in other words, he contends that the officers could not have reasonably believed that he had committed the robbery of the yellow cabdriver. He argues, "Not a single fact (as distinguished from mere suspicion) can be pointed out in this record connecting the defendant with the alleged robbery of the cab."

▮▮▮ Initially, we agree with the defendant that the standards to be applied in determining whether probable cause exists for an arrest when, as in the case at bar, the arresting officers have not procured a warrant, are no less stringent than where an arrest warrant is obtained. Wong Sun v. United States, 371 US 471. We also agree with him that an arrest made without a warrant on the basis of mere suspicion is invalid. Henry v. United States, 361 US 98. However, to sustain an arrest it is not necessary that the officer be cognizant of evidence sufficient to sustain a conviction. People

v. Fiorito, 19 Ill2d 246, 166 NE2d 606. "Probable cause for arrest exists when the facts and circumstances within the arresting officer's knowledge, and of which he had reasonable and trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in believing that an offense has been committed, and that the person arrested is guilty." People v. Peak, 29 Ill2d 343, at page 348, 194 NE2d 322. What constitutes the reasonable grounds on which probable cause is based depends on the surrounding facts and circumstances of each individual case. People v. Scalisi, 324 Ill 131, 154 NE 715.

■ The basic question, therefore, presented to us on review, is whether the finding of the trial judge that under the facts and circumstances the officers had probable cause to arrest the defendant, was justified in light of the evidence presented at the hearing on defendant's motion to suppress. The actions of a policeman in making an arrest are to be judged by the factual considerations of everyday life; and any assessment of the reasonableness of an arresting officer's conduct should take into consideration the responsibility of the police to prevent crime and to apprehend criminals along with the fact that they often must act on a quick appraisal of the data before them. Brinegar v. United States, 338 US 160; People v. Watkins, 19 Ill2d 11, 166 NE2d 433.

■ The police, in the case at bar, were faced with a series of cabdriver robberies that followed a recurring pattern. Officers Barzydlo and Finger were called upon to investigate the latest robbery in the series. The defendant, who fitted the general description which the police had received of the robber, was spotted by the two officers riding in a cab in the area in which the robberies had been taking place. Furthermore, the police came upon him within ten minutes after the latest robbery had taken place in an area a short distance from the scene of the crime. Viewing the totality of facts and

254

circumstances known to the officers at the time of the arrest, we have concluded that they had reasonable grounds to believe that the defendant had committed the cabdriver robbery which they were investigating; and, therefore, the finding of the trial judge that the officers had probable cause to arrest the defendant was justified.

■ The defendant contends that the description the officers received of the robber would have fit "thousands of persons," and for this reason the arrest was not based upon probable cause, but on mere suspicion. We cannot agree with this contention. A general description, when it is supported by other relevant facts and circumstances known to the arresting officers (as in the instant case), is sufficient to provide the probable cause necessary to justify an arrest. People v. Scott, 68 Ill App2d 106, 215 NE2d 452. In support of his contention the defendant relies primarily upon Gatlin v. United States, 326 F2d 666 (DC Cir, 1963). However, the facts and circumstances of Gatlin are significantly different from those in the case at bar. In Gatlin, following the robbery of a restaurant, a "general description of three colored males" was broadcast to the arresting officer. Forty-five minutes after he received the first description of the robbers the arresting officer was told by a cabdriver that "a suspicious acting person" had just fled from his cab. The officer proceeded to search the area for this person. Approximately one hour and forty minutes after the original description had been radioed, the officer came upon the defendant at a spot approximately a mile and a half from the scene of the crime and arrested him. No other facts and circumstances having been introduced to justify the arrest, the court held that there was no probable cause for the defendant's arrest.

In Gatlin it is apparent that the defendant was arrested only on the basis of a general description. In the instant case, however, additional facts and circumstances

255

■

were known to the arresting officers besides the general description they had received. The defendant, in the case at bar, was arrested in close proximity to the scene of the crime shortly after it had been committed; in addition, his presence in a taxicab in an area where a series of related cabdriver robberies had been taking place provided the police with further proof that the defendant was the culprit they were seeking. We conclude, therefore, that Gatlin is factually inapposite to the case at bar.

■ The defendant's final contention is that he was not proved guilty of the crime charged beyond a reasonable doubt. He argues that the State did not prove that he knowingly possessed the heroin found in the cab. A conviction for the crime of the unlawful possession of narcotics can only be sustained on appeal if the State has established at trial that the defendant knew of the presence of the narcotics and that the narcotics were in his immediate and exclusive control. However, knowledge and possession are both susceptible to proof by circumstantial evidence. People v. Mack, 12 Ill2d 151, 145 NE2d 609; People v. Richardson, 21 Ill2d 435, 172 NE2d 801. Although circumstantial evidence must not give rise to any reasonable hypothesis consistent with the innocence of the party accused, this does not mean that the trier of fact must search out potential explanations compatible with innocence. People v. Huff, 29 Ill2d 315, 194 NE2d 230. Circumstantial evidence is legal evidence, and a conviction may be sustained on it alone if the character of said evidence convinces the trier of fact of the defendant's guilt beyond a reasonable doubt. People v. Colby, 27 Ill2d 273, 189 NE2d 317.

■ The finding of guilty by the trial judge in the instant case was justified by the evidence introduced by the State. After he was conscious of the presence of

the police, the defendant made a "twisting" motion to the right side of the cab's passenger seat; and the heroin was found by the police under that part of the rear seat towards which they had seen the defendant move. The trier of fact could reasonably have inferred from the defendant's behavior that he was in possession of the heroin at the time the police spotlight was directed into the cab's rear seat, and in an effort to avoid detection, the defendant made a sudden movement to hide the evidence of his guilt. The fact that the defendant hid the heroin when the police approached strongly suggests that he knew what it was. People v. Pigrenet, 26 Ill2d 224, 186 NE2d 306.

The defendant argues that "it is at least just as reasonable to believe that the heroin belonged to a previous passenger as to the appellant." As we have previously pointed out, the trier of fact could have inferred that the defendant, in an effort to escape arrest, had placed the narcotic substance under the cab's seat. We see no reason to interfere with his determination in this regard, for we are convinced that the evidence introduced produced a reasonable and moral certainty that the defendant was guilty of having in his possession the heroin found in the cab. See People v. Bernette, 30 Ill2d 359, 197 NE2d 436.

In People v. Jackson, 23 Ill2d 360, 178 NE2d 320, cited by the defendant, the police entered the defendant's apartment and the defendant immediately ran to the bathroom and locked herself in. Subsequently, a search of the bathroom disclosed nothing of an incriminating nature, but the defendant's purse was lying open on the floor. The window in the bathroom opened on an airwell to which several of the other apartments in the building had access. At the bottom of the airwell the police found a package containing heroin. The Illinois

Supreme Court reversed the defendant's conviction for unlawful possession of narcotic drugs, holding that the evidence had not established that the defendant ever had possession of the narcotic drug found at the bottom of the airwell. The salient distinguishing factor between Jackson and the case at bar is that in the instant case possession by the defendant has been established by satisfactory circumstantial evidence, i. e., the defendant's movements followed by the finding of the heroin in the cab's back seat. In Jackson, on the other hand, the State failed to establish any connection between the activities of the defendant and the discovery of the narcotics at the bottom of the airwell. Furthermore, in the case at bar, the defendant was in sole possession of the cab's back seat between the time of his movements and the discovery of the heroin, while in Jackson it was not established that between the time the defendant ran into her bathroom and the finding of the narcotic substance another person couldn't have thrown the drugs down the airwell.

Likewise, in People v. Evans, 72 Ill App2d 146, 218 NE2d 781, a conviction for the unlawful possession of narcotic drugs was reversed because the State failed to introduce any evidence which tended to connect the defendants with narcotics which were found in the area where they had been sitting. The court in Evans concluded that the facts before it were substantially similar to those involved in the Jackson decision, and therefore, deemed itself bound by the latter opinion. For the reasons previously stated in our discussion of Jackson we conclude that Evans is inapplicable to the instant case.

The judgment of the Criminal Court is affirmed.

Affirmed.

ADESKO and MURPHY, JJ., concur.