The People of the State of Illinois, Plaintiff-Appellee,
v. Cordell J. Cassell, Defendant-Appellant.

Gen. Nos. 52,771, 52,772, 52,773. (Consolidated.)

First District, Fourth Division.

October 9, 1968.

Rehearing denied December 4, 1968.

Kenneth E. Wilson, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Kavanaugh, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant appeals his conviction, after a bench trial, of the crimes of deceptive practices (Case No. 52,773), unlawful use of a weapon (Case No. 52,772) and resisting arrest (Case No. 52,771).[1] He received concurrent one-year sentences in the County Jail for each of the first two crimes, and was fined $100 for violation of the resisting arrest ordinance. On appeal he contends that he was prejudiced by the court's failure to exclude certain evidence and that his guilt was not proved beyond a reasonable doubt. We will discuss defendant's contentions as they apply to each individual case.

---

[1] The three individual indictments were consolidated at trial and on appeal.

## Case No. 52,773—Deceptive Practices

Mary Kovacit testified that she was a cashier in the Polk Brothers Store at 8530 South Cottage Grove Avenue on April 10, 1967; that defendant and a Mr. Wiseman were together in the store some time after 9:00 p. m. buying records; that it was "close to closing"; that Wiseman gave her the credit card (introduced as People's Exhibit 1) and signed the bill; and that while she was marking down the records they had purchased, defendant inquired about the price of a can of cleaner and requested that it be added to the bill.

Jacob Loefflel testified that he was an investigator for Continental Illinois Bank; that the credit card which had been marked as Exhibit 1 was owned by the Continental Illinois Bank; that it had been issued to one Thomas Harland; that it was turned in by Harland and returned to the bank on April 7 (three days before it was presented to Mary Kovacit at Polk Brothers); that he did not know what happened to the credit card; and that he saw it at the Kensington Police Station after he had been called by the police.

Police Officer George Howard testified that he and his partner, Officer Charles Arrington, observed three men sitting in an automobile parked in front of the Polk Brothers Store at about 9:00 p. m. on the day in question; that after he and Arrington had been watching about ten minutes, two men (later identified as defendant and Wiseman) got out of the car and went into the store; that neither he nor Arrington was wearing a uniform, nor was their car marked; that he and Arrington waited another ten or fifteen minutes and then approached the car. He said that Maurice Cassell was sitting alone in the car, that he observed that the back seat was loaded with groceries and other merchandise, and that he was told by Maurice Cassell that he had come with his brother who was in the store buying furniture. Howard testified

281

that he saw defendant and Wiseman purchase merchandise with a credit card, that there had been a problem with the illegal use of credit cards in the district, and that the car had contained groceries from the only grocery store honoring credit cards. He stated that he asked them about the credit card; that Wiseman admitted the illegal use of the credit card; that defendant admitted coming to the store with Wiseman; that defendant asked, "How did you get wise to us?"; and that he then advised defendant and Wiseman that they were under arrest.

Officer Charles Arrington testified that his testimony would be substantially the same as that of Officer Howard and added that he spoke to the cashier with whom Wiseman and Cassell had dealt to find out if a credit card had been used.

Defendant testified that he did not know Wiseman had a credit card not belonging to him; that he considered the records purchased Wiseman's; that Wiseman paid for the records and that he had purchased nothing that day.

■ Defendant contends that there was insufficient evidence to establish his guilt beyond a reasonable doubt of deceptive practices.[2] He argues that the prosecution failed to establish his complicity in the unlawful use of the credit card because there was no evidence showing that he was either connected with the purchases or that he knew of the credit card's illegality. However, there was evidence that defendant was with Wiseman, that he

---

[2] Section 17–1 of the Code of Criminal Law and Procedure, section 17–1, c 38, Ill Rev Stats 1965, provides in part:

17–1. § 17–1. Deceptive Practices.) A person commits a deceptive practice when, with intent to defraud:

. . . . . .

(e) He obtains, or attempts to obtain property, labor or services by any of the following means:

1. he uses a credit card which was issued to another, without the other's consent.

selected a can of cleaner and had it added to the bill, and that he asked the police, "How did you get wise to us?" Under these circumstances we are unable to disturb the conclusion of the trier of fact that defendant participated in the illegal use of the credit card.

■ Defendant also contends that the credit card should have been suppressed because it was taken from Wiseman in an illegal search and seizure. However, at the trial defendant made no objection to the admissibility of the card on that ground and made no motion to suppress this evidence. His failure to do so prevents consideration of this argument. People v. King, 26 Ill2d 586, 188 NE2d 11.

The judgment in Case No. 52,773 is affirmed.

### Case No. 52,772—Unlawful Use of a Weapon

Defendant first contends that the tear gas pencil introduced in evidence as State's Exhibit 2 was the product of an illegal search and seizure and that his motion to suppress it should have been sustained. Defendant's testimony was the sole evidence submitted on the motion to suppress. He testified that at the time and place in question he was merely browsing about the record department; that he had inquired about a defective needle he had previously bought in the store; that a police officer, after stopping defendant and identifying himself, asked him about a credit card; and that the police officer showed no warrant. He said that, at the time, no one had complained about him; that he had neither created any disturbance nor committed any crimes; that the police officer told him to go outside; that the officer looked inside defendant's car and asked defendant to open the trunk and that he also searched defendant's person where the tear gas pencil was found. On cross-examination the prosecution sought to establish that no force was used by the officer and that defendant complied with the officer's requests voluntarily.

283

■ The State now argues that defendant produced the tear gas pencil voluntarily and it is, therefore, not the product of a search and seizure. However, we believe what the court said of similar circumstances in People v. Harr, 93 Ill App2d 146, at page 151, 235 NE2d 1, is appropriate here:

> The facts do not justify the conclusion that defendant consented except as the consent was secured by the officer's demand and the authority of his office.

The State also argues that even if this was a search and seizure, defendant had the burden of proving its illegality and he failed of that burden. A search without a warrant is legal if incidental to a lawful arrest. An arrest without a warrant is lawful if the police have probable cause to believe that the person arrested has or is committing a crime. People v. Erickson, 31 Ill2d 230, 201 NE2d 422. We agree that defendant bore the burden of proving that the tear gas pencil was taken in a search not incidental to a lawful arrest. Ill Rev Stats 1965, c 38, § 114–12. At the hearing on the motion the trial judge denied the motion to suppress saying that all that had been presented were defendant's ". . . statements that he didn't do anything." However, under the rule enunciated in People v. Ezell, 61 Ill App2d 326, 210 NE2d 331 (abst), defendant's evidence that the police officer had no warrant and that defendant was doing nothing unusual when stopped, made a prima facie case that the police lacked probable cause. The burden of going forward with evidence to negate it shifted to the State. Although the State offered evidence bearing on this issue in the trial itself, it failed to offer evidence to establish probable cause at the hearing. The tear gas pencil should have been suppressed. The trial court's failure to do so

constituted reversible error and, accordingly, the decision of the trial court in Case No. 52,772 is reversed and the cause remanded for a new trial.

**Case No. 52,771—Resisting Arrest**

Defendant contends that his conviction of resisting arrest under chapter 11, section 33 of the Municipal Code of Chicago, was not proved beyond a reasonable doubt. However, the State concedes that in Landry v. Daley, 280 F Supp 968 (1968), the court held that this ordinance was unconstitutional in that it violated the First and Fifth amendments of the Constitution of the United States. Subsequently the city council repealed the ordinance. Thus we find it unnecessary to discuss the sufficiency of the evidence under this point and will reverse this judgment.

Because of what we have said above, the conviction of deceptive practices (No. 52,773) is affirmed; the conviction of unlawful use of a weapon (No. 52,772) is reversed and remanded; the conviction of resisting arrest (No. 52,771) is reversed.

Affirmed in part, reversed and remanded in part, and reversed in part.

McCORMICK, P. J. and ENGLISH, J., concur.