THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES JORDAN, Defendant-Appellant.

(No. 56712; ▮▮▮▮▮▮▮▮▮

First District (1st Division)—April 23, 1973.

Ronald P. Alwin, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Patricia C. Bobb, and Peter Costa, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

James Jordan was charged with possession of a depressant drug in violation of section 802(c) of the Drug Abuse Control Act. (Ill. Rev. Stat. 1969, ch. 111½, par. 802(c).) After a bench trial he was found guilty and sentenced to 60 days in the House of Correction. The only error assigned is the failure to suppress the evidence found on his person.

Officer Ernest Harris testified that, after the defendant was stopped for making an illegal left hand turn, he could not produce a driver's license, but only a prior driving citation. The defendant was then placed under arrest and informed that he would have to accompany the officer to the station to post the proper bond. The defendant was given a pat-down search prior to being placed in the squad car which was to transport him to the police station. At that time, the officer discovered a small vial of pills which were analyzed as a depressant drug, barbituric acid. The record does not disclose where the officer found the vial. At the hearing on the motion to suppress, the defendant sought to prove that he drove his own car to the police station. The court said: "I don't care how he

got there. He is in this man's custody. I don't care if he drove in his own car."

The rule governing admissibility of evidence seized after traffic arrests has an erratic history. Beginning with *People v. Edge* (1950), 406 Ill. 490, 94 N.E.2d 359, the Supreme Court held that an arrest for a traffic violation (obstructing an alley and failure to have a safety-inspection sticker) justified a search of the defendant. That rule was followed in *People v. Clark*, 9 Ill.2d 400, 137 N.E.2d 820 (illegal parking), and *People v. Berry*, 17 Ill.2d 247, 161 N.E.2d 315 (failure to have State license plates and city vehicle sticker).

In *People v. Watkins*, 19 Ill.2d 11, 18-19, 166 N.E.2d 433, the Supreme Court held that not every traffic violation justifies a search, overruling *Clark* and *Berry*. The court said: "A search incident to an arrest is authorized when it is reasonably necessary to protect the arresting officer from attack, to prevent the prisoner from escaping, or to discover fruits of a crime. * * * Some traffic violations would justify a search." A parking violation alone, the court held, would not have justified the search, but because the officers were members of the gambling detail who had previously arrested the defendant and because he ran back into a building after he saw them, they had the right "to assume that they were dealing with a situation more serious than a routine parking violation." See also *People v. Mayo*, 19 Ill.2d 136, 166 N.E.2d 440.

In *People v. Zeravich*, 30 Ill.2d 275, 195 N.E.2d 612, the defendant was arrested for driving with obstructed vision. The time was 4:30 A.M., and the temperature was fifteen degrees below zero. He was seen coming from a private parking lot. The officers noted that the defendant matched the description of a man wanted for other violations in the area. In *People v. Thomas*, 31 Ill.2d 212, 201 N.E.2d 413, the defendant was arrested at 5:00 A.M. driving without proper lights. The officers learned that he did not have a driver's license and had just been released from jail. In *People v. Davis*, 33 Ill.2d 134, 210 N.E.2d 530, the defendant was arrested at 1:20 A.M. for making an improper turn and driving with no light on the rear license plate. After stopping him, the police saw a tin foil package on the floor at the driver's side and opened the package, which contained white powder. They searched the car and found another tin foil package which contained narcotics in the crack of the front seat. The search in these three cases was upheld because the evidence showed that the police officers could reasonably conclude that they were dealing with a criminal rather than an ordinary traffic violator.

In *People v. Lewis*, 34 Ill.2d 211, 215 N.E.2d 283, the defendant was driving a 1959 Cadillac sedan at 8:30 P.M. when he was stopped for going through a red light. The officers noticed that the defendant and

a similar 1959 Cadillac bearing the defendant's license number were listed in the Daily Police Department Bulletin as wanted in connection with a burglary. While the defendant was kept in a squad car, one officer searched the trunk of the Cadillac. The Supreme Court interpreted *Watkins* to mean that a search is permissible only when it is reasonably necessary to protect the officer from attack, to prevent the prisoner from escaping, or to discover fruits of a crime. The court pointed out that at the time of the search there was no danger of attack nor the likelihood of escape. In reversing the conviction, the court construed "fruits of a crime" to be restricted to the fruits of the crime for which he was arrested, *i.e.,* the traffic violation. It should be pointed out that this case does not hinge on the propriety of the search but, rather, what was seized.

Over a year later, the court decided on the same day *People v. Brown,* 38 Ill.2d 353, 231 N.E.2d 577, and *People v. Jones,* 38 Ill.2d 427, 231 N.E.2d 580. In *Brown,* the officers had stopped the car because it had no State license plates. They learned then that the car had no city sticker and that the driver had no driver's license. He showed the officers a title which was not dated or signed and did not contain his name. The officers noticed a set of golf clubs and some clothing for which the driver could give no explanation. The search of the trunk was upheld. In *Jones,* the arrest was not based on a traffic violation, but the Supreme Court expanded the right to seize property to include "mere evidence" and not just weapons or fruits of the crime for which the defendant was initially arrested. (See also Ill. Rev. Stat. 1969, ch. 38, sec. 108—1(d).) Both cases overruled *People v. Lewis, Jones* expressly and *Brown* by implication.

In *People v. Reed,* 37 Ill.2d 91, 227 N.E.2d 69, the defendant was stopped around noon because his rear license plate was missing; he produced his driver's license and proof that he had purchased both license plates; the defendant behaved in a nervous fashion, moving his hands around and looking from side to side and "toward his car." The officers searched him and found no weapon. They decided to take him to the police station "to check him out." A search of the car disclosed a bag containing heroin under the front seat. The court reversed a denial of the suppression of the evidence on the ground that the defendant's "nervous" behavior at the time he was stopped did not warrant the search of his automobile.

In *People v. Holloman,* 46 Ill.2d 311, 263 N.E.2d 7, the defendant made an improper turn; he was unable to produce a driver's license or motor vehicle registration certificate; he started backing away from the officers, was placed under arrest and searched "for weapons for [the officer's]

protection." In making a cursory pat-down for weapons, the officer felt, hidden inside the defendant's belt at the small of his back, a hard object which was a large manila envelope containing heroin. The court upheld the search, noting that the police had justification to believe from the defendant's furtive behavior that criminal activities were involved and the evidence seized was not discovered in an apparently innocuous place.

■■ Reading these cases together, we conclude that the standard imposed by *Watkins, Mayo* and *Davis*, followed in *People v. Tate*, 38 Ill.2d 184, 188, 230 N.E.2d 697, requires that "circumstances reasonably indicate that the police may be dealing not with the ordinary traffic violator, but with a criminal." We further conclude that the police may properly seize pursuant to a *reasonable* search more than weapons or the fruits of the crime for which he has been arrested.

■■ The defendant here was driving under a traffic citation, which was an accepted procedure after he had surrendered his driver's license on a previous violation. No other circumstance appears to have justified the search. Significantly, the defendant sought to prove that the police permitted him to drive his own car to the station. The trial judge ruled that such proof was immaterial, that the only relevant fact was that the man was in custody. If that position is correct, in every case where a motorist does not wish to surrender his driver's license after a traffic violation but wishes to post a bond at the station, or whenever a motorist does not have his driver's license, the police are justified in searching him. Such a holding flies in the face of the clear meaning of *Watkins*. If the police did not intend to convey the defendant in a police vehicle, what would be the basis of their right to search? A failure to have a driver's license or a preference to posting a bond rather than surrendering the license are not such facts, standing alone, that reasonably indicate to an officer that he may be in danger of an attack.

■■ A more troublesome question is presented by the State's argument in support of the search here that, whenever circumstances require the transportation of a defendant in a police vehicle, the officer is always justified in making a search. However, the determination of the right to search *at all* does not end the problem. The scope of any search, of course, is *always* subject to the standard of reasonableness, regardless of the underlying justification. For example, under some circumstances a search requiring removal of all of the defendant's clothing might be justified. But who would say that such a search would be justified under the facts of this case? Assuming the validity of the State's argument, which is based on understandable concern for the safety of the officer, the question then becomes to what extent may the officer search. A more

thorough search of a man seized in a commission of a felony would be permitted than of a man who failed to have a driver's license. The final question then is whether the search of the defendant here was of unreasonable scope. We conclude that it was.

The officer "conducted a pat-down" search "for his own safety," and found a small vial "that [was] like a pharmacist puts pills in." At that time he did not know the chemical make-up of the pills in the vial. The motion for a new trial discloses that the vial was found in the defendant's pocket, which, unlike the facts in *Holloman*, is an "apparently innocuous place." In *Tinney v. Wilson*, 408 F.2d 912, 916, the Ninth Circuit Court of Appeals reversed the conviction based upon a search where the officer in "the normal course of his 'frisk' felt only a small object, which was not, in his mind, a potential weapon."

While we make no determination whether the police had the right to make any search in this case, we conclude that, even if they did, the search was unreasonable, and the motion to suppress should have been sustained. The judgment of the circuit court is reversed.

Judgment reversed.

BURKE, P. J., and GOLDBERG, J., concur.