THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS KING *et al.,* Defendants-Appellants.

(Nos. 57130-31 cons.;

First District (2nd Division)—April 24, 1973.

*Supplemental opinion upon denial of rehearing July 5, 1973.*

DOWNING, J., took no part.

James J. Doherty, Public Defender, of Chicago, (Stanley L. Sacks and Robert Morel Gray, Assistant Public Defenders, of counsel,) for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and George M. Keane, Jr., Assistant State's Attorneys, of counsel,) for the People.

PER CURIAM:

Defendants, Thomas King and Golden Williams, were convicted in a bench trial of knowingly carrying a weapon concealed in a vehicle in violation of ch. 18, sec. 24—1(a) (4), and of failing to have in their possession a firearms owner's identification card in violation of ch. 38, sec. 83—2. Defendants were placed on probation for one year on condition that each serve the first sixty days in the House of Correction. On this appeal defendants argue: (1) the search was unlawful because it was conducted without probable cause in that the reliability of the informant was not established, and because there were no "exigent circumstances present" which prevented the officers from obtaining a warrant to search the vehicle; (2) since the defense did not consent to the stipulation that the evidence taken on the motion to suppress be allowed in the case-in-chief, there was no testimony to connect the defendants with either the weapons in question or the car involved; and (3) defendants were not proved guilty beyond a reasonable doubt because the prosecution did not show that they had knowledge that the firearms were in the automobile and were immediately accessible to the defendants. Since we conclude that the search was unlawful, it is unnecessary to consider the latter contentions.

At the hearing on defendants' motion to suppress the guns as evidence, Golden Williams testified: At about 1:00 A.M. on October 16, 1971, he was in his mother's automobile with Thomas King and Bernard Boyde; the car was parked and the police approached and told "us to get out with our hands up"; the police told them to get out and hold their hands up in the air and then lie down on the ground, and proceeded to search "us to see if we had any weapons"; they asked him for a driver's license, which he showed them; and, after a search of his person, the police made a search of the vehicle and recovered a .22 caliber pistol and a .25 caliber automatic pistol from the glove compartment, and a rifle, a shotgun, and a ".30R6" [sic] from the trunk; he had been parked there for about half an hour; it was about 1:00 A.M. at 2836 W. Lexington, a residential side street.

Chicago police officer William Brown then testified: he is an officer with the Gang Intelligence Unit and on October 16, 1971, about 12:30 A.M. in the area of Lexington and California, he received information that an automobile would be in this area at a certain time, 1:00 A.M.

to be exact, and have ammunition and guns in the car to sell to a certain party in the area; he conducted a "stake-out" at California and Lexington, and, after about 30 to 45 minutes, approximately 1:00 A.M., a white, 1965, Mercury automobile came up and parked in front of the address 2836 W. Lexington; in the approximately three minutes before the officers approached the automobile, five or six automobiles had come "through the area" and "just passed"; he announced himself as a police officer, told the occupants "to remove themselves" from the automobile, placed them under arrest, and searched the vehicle. Upon cross-examination, he testified that at "about five minutes to twelve" he had received a phone call that a sale of weapons was going to occur; the call was from an informant he had known for two years; the information was that a white, late model vehicle would be in the area, and would contain two people (but three were, in fact, in the vehicle); the officer knew the informant for two years, had received information from him on prior occasions, ten, fifteen times, and some resulted in actual arrests, but not convictions.

The State, apparently conceding that there was no lawful arrest, even for a traffic violation, argues that the right to search an automobile, as opposed to the person (of a suspect or a defendant) or premises, is not dependent on the right to arrest, but can be grounded on the reasonable cause that the officers have to believe that the contents of the automobile offend against the law. (*Carroll v. United States* (1925), 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280; *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L.Ed.2d 419, 90 S.Ct. 1975; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022.) Defendant, on the same authority, argues that the warrantless search of a parked, although movable, vehicle requires not only probable cause, but also proof of exigent circumstances justifying the search.

■■ One of the circumstances to be considered in determining probable cause, the defendant argues, is whether the information upon which the search is based is hearsay, and, while hearsay may support a search *warrant,* there must also be a substantial, independent basis to support the credibility of the hearsay information. (*Aguilar v. Texas* (1964), 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509.) The Illinois Supreme Court has said that it encourages the police to seek warrants, rather than to act on their own; consequently, a higher standard is required of police officers acting on their own than of magistrates issuing warrants, and a magistrate's issuance of a warrant will be upheld "on evidence of a less persuasive character than would have justified an officer acting on his own determination and without a warrant". (*People v. Saiken* (1971), 49 Ill.2d 504, 511, 275 N.E.2d 381.) Therefore, the "substantial, inde-

pendent basis" to support the credibility of the hearsay information which *Aguilar v. Texas* requires before the issuance of a warrant must also be present and to an even greater degree where, as here, an officer is acting on his own without a warrant. The fact that the search was of an automobile, rather than of the person or of premises, does not affect the need for the State to show probable cause; it merely affects the showing of the "exigent circumstances" which may excuse the failure of the police officers to procure a warrant.

The State's evidence on the motion to suppress reveals only that the officer had known the informant for two years and that information previously furnished had led to arrests, but not to any convictions or to the recovery of any contraband. The State argues that the informant's information was substantiated by the "events" just prior to the search, but the only "event" to which the State refers is that "the defendants arrived in the area, at the time and in the type of car as described by the informant, and were joined by a third individual". However, the testimony heard at the hearing on the motion to suppress does not support the State's assertion that the two men were "joined by a third individual". The testimony of the defendant and the police officer agreed that three men were in the car when the arrest was made; the officer testified no cars stopped in the three minutes before the officer approached. It was not until the officer was recalled in connection with the case-in-chief that he answered a question about "how many people" were in the vehicle that stopped: "Two at the time, and one came in, got in." Once the defendant has made a *prima facie* case that the police lacked probable cause (*i.e.* by evidence that the police had no warrant and defendant was doing nothing unusual when stopped), the State must prove probable cause at the hearing itself, not later at the trial. (*People v. Cassell* (1968), 101 Ill.App.2d 279, 284-285, 243 N.E.2d 363.) We conclude that the informant's statement was not supported by any substantial, independent basis, as required by *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509.

The behavior observed by the police officers in this case was innocent. Entirely absent from the situation here is any evidence from which the officers could even suspect that any illegal activity was afoot. This total lack of incriminating circumstance is what distinguishes this case from the leading Illinois case, *People v. Canaday* (1971), 49 Ill.2d 416, 275 N.E.2d 356.

Since the State did not prove that the officers had probable cause to believe that the contents of the automobile offended against the law and that there were exigent circumstances present that justified a warrant-

less search, the search of defendant's automobile was unlawful and the motion to suppress, consequently, should have been granted. The judgment of the Circuit Court of Cook County is reversed.

Judgment reversed.

## SUPPLEMENTAL OPINION UPON DENIAL OF PETITION FOR REHEARING

PER CURIAM:

On petition for rehearing, the State contends that the conviction of defendants was improperly reversed. The State argues that the police had probable cause to conduct the warrantless search based on the informant's tip. We held that it did not.

■■ In *Aguilar v. Texas*, 378 U.S. 108, 114, the Supreme Court held that hearsay may justify the issuance of a search warrant if the affidavit sets forth some underlying circumstances tending to substantiate the informant's conclusions, *and* some underlying circumstances from which it could be believed that the informant's information was credible or reliable. A showing of underlying circumstances to support *both* the informant's conclusions *and* his reliability is even more necessary in order to show probable cause for a warrantless search (*People v. Saiken* (1971), 49 Ill.2d 504, 511, 275 N.E.2d 381), though the underlying circumstances to show prior reliability need not be as strong when the informer is a citizen informer rather than a professional informer (*Draper v. U.S.* (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327). Moreover, the principles just stated as to the reasonableness of a warrantless search presuppose a reasonable showing of exigency.

Our holding was essentially targeted on the matter of the showing of underlying circumstances to support the informant's conclusions, rather than on the matter of exigency or prior reliability. To illustrate our view of the basic flaw in the instant case, we contrast the instant case with the case of *People v. Herbert* (1971), 131 Ill.App.2d 518, 268 N.E.2d 205, in which this court reversed and remanded with directions to the trial court to deny defendant's motion to suppress evidence. In *Herbert*, a police officer testified that he had received a call from an informant whom he had known for nine months. He knew this person through "prior meetings, prior conversations, prior acquaintances". These prior occasions had resulted in approximately ten arrests, but no convictions as of the time of the incident. The informant told the officer that, at approximately 3:30 P.M., in the vicinity of 2621 W. Greenleaf Avenue, *an* individual was going to deliver narcotics to the Lincoln Park area in a 1963 gold-colored Cadillac. The informant did not describe the indi-

vidual, but told the officer that he had seen the individual put the "contraband" in the trunk of the car. The officer began a surveillance of 2621 W. Greenleaf, and, at approximately 3:30 P.M., they saw defendant and another person enter a gold-colored Cadillac.

Our court in *Herbert* held that the officer's testimony was credible and that the officers had probable cause to search the Cadillac. In that case, all the requirements for *Aguilar* were met: the reliability of the informant was established because, even though prior arrests based on the informant's tips had not led to convictions, the informant had told the officer that he knew that narcotics were in the trunk of the Cadillac because he had seen "the contraband" placed there; and the officers, by observation at the scene, had personally corroborated the descriptive details which had been given by the informant.

In the instant case, the informant had been known to the officers for two years, and information which he had furnished had led to arrests but not to convictions or recovery of contraband. The latter fact (as partially explained by the further fact that the Gang Intelligence Unit frequently deals with juveniles), plus the fact that the informant here was a citizen informant, may well meet the requirement of underlying circumstances to support the informant's prior reliability. And the time available plus the movability of the car may well provide a reasonable showing of exigency. But there was *no* testimony by the officer as to how the informant knew that weapons would be in the car or that there was to be a sale of weapons. Therefore, no underlying circumstances were presented tending to substantiate the informant's conclusions. The corroboration by police by personal observation at the scene substantiated some of the facts of the tip, but none of the substantiated facts, as adduced at the hearing on the motion to suppress, were in themselves incriminating up to the time the police acted. Under *Aguilar* this is not sufficient.

Petition for rehearing denied.

DOWNING, J., took no part in the consideration or decision of this case.