THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* COMMODORE TILDEN, Defendant-Appellant.

(No. 59492;

First District (4th Division)—September 11, 1974.

*Rehearing denied March 17, 1975.*

448

JOHNSON, J., dissenting.

Howard T. Savage, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Roger Horwitz, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Commodore Tilden, was charged in a complaint with committing the offense of unlawful use of weapons in that on or about October 10, 1971, he "knowingly carried concealed on or about his person, or in a vehicle, a gun, to wit: one .22 Cal. Luger automatic pistol," in violation of section 24—1(a)(4) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(4).

Prior to trial the defense attorney moved to suppress evidence. A hearing was held on the motion and evidence heard. Raymond Krakausky, the arresting police officer who was called as a witness for defendant, testified that on October 10, 1971, he observed a 1960 green Oldsmobile going south on Prairie Avenue from 43rd Street in Chicago being driven by the defendant. One other person was in the car with the defendant. The officer noticed that the vehicle "had no headlights or taillights" so he stopped it. The defendant got out of the car. He asked him for his driver's license and the defendant gave it to him. He questioned the defendant about the violation and the defendant told him he had just left a tavern and forget to put the lights on. During the course of the investigation the officer observed an empty holster on the right side of the defendant's pants. He thereupon first searched the defendant, then went to the automobile, the front door of which had remained open, and looked under the front seat. On cross-examination by the assistant State's Attorney the officer said he observed the holster on the person of defendant, not as a result of any search, but because it was in plain view.

Commodore Tilden, the defendant, testified that the officer stopped

him and upon request he gave him his driver's license. The driver's license was in his top coat pocket, which he said was buttoned. He denied having a holster on his person. He said that after the officer questioned him the officer proceeded to search the car. On cross-examination he denied that a holster shown to him was his and that the officer found it on his person.

The motion to suppress the evidence was denied. The case then proceeded to trial after the defendant entered a plea of not guilty and waived a jury. It was stipulated that Officer Krakausky's testimony on the motion to suppress would be the same as on trial. The officer then further testified that when he looked under the front seat on the driver's side he found a loaded gun, which he identified as State's Exhibit Number One. He said a female was sitting on the passenger side of the front seat in the car. After he found the gun he advised the defendant of his constitutional rights. On cross-examination he stated that the defendant never admitted owning the gun, and that the female passenger never admitted owning it either.

The defense counsel moved for a directed finding of not guilty at the close of the evidence and it was denied. The court then entered a finding of guilty as charged and sentenced the defendant to 6 months in the House of Corrections.

It is argued in this appeal that (1) the defendant's motion to suppress should have been sustained since there was no showing that the stopping of his auto was lawful, nor any showing that the subsequent search of his auto was justified and (2) the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt.

It is most strenuously argued regarding the alleged error in the court's denial of the motion to suppress that the State offered no evidence to establish that the arrest (which is how defendant categorizes the initial traffic stop) of the defendant was lawful, and that therefore any information or evidence obtained as a result of it should have been excluded from evidence. (*Wong Sun v. United States*, 371 U.S. 471.) This is premised on the assertion that the State failed to show that the officer had, in fact, stopped the defendant's auto because of the commission of a traffic violation, since no evidence was proffered to establish that driving without lights at night violated any State statute or municipal ordinance, or that the stop was actually made at night.

We acknowledge the State's burden to go forward with evidence to show reasonable grounds for the initial seizure once the defendant had made a prima facie case that the seizure was unlawful. (*People v. Cassell*, 101 Ill.App.2d 279, 243 N.E.2d 363; *People v. Ezell*, 61 Ill.App.2d 326, 210 N.E.2d 331 (abstract opinion).) But here that was not done.

The only two witnesses at the hearing on the motion to suppress were the police officer and the defendant. The officer testified, upon questioning by defense counsel, that he stopped the defendant's car for having no lights. He stated that after taking the defendant's driver's license, he began questioning him about the "violation," which we can only interpret as meaning driving without lights at a time when they were required by law. The officer then said the defendant told him "he just left a tavern and he forgot to put the lights on." This admission by the defendant was never controverted, at the hearing or at trial. After the officer's testimony, defense counsel argued only the invalidity of the search based on the mere alleged presence of a gun holster, and concluded by stating, "[a]s to the violation of not having lights, that is a very minor traffic charge." The defendant's testimony at the hearing, which immediately followed, in no way touched upon the validity of the initial traffic stop, but was concerned only with events subsequent to the stop.

■■ Based on this record, we hold that the defendant failed to make out a prima facie case that the stop was unreasonable, and that the officer's testimony was clearly sufficient to establish a proper purpose for the stop and to support a denial of the motion to suppress. Indeed, a fair reading of the record would indicate that the defendant never raised the issue of the validity of the initial stop at the hearing, and has waived any right to have it reviewed on appeal.

*People v. Ezell,* 61 Ill.App.2d 326, 210 N.E.2d 331, and *People v. Cassell,* 101 Ill.App.2d 279, 243 N.E.2d 363, cited by the defendant, are manifestly not in point. In both of these cases the denial of a motion to suppress was held to be error. But in *Ezell* the testimony of the defendant was the only evidence adduced at the hearing on the motion. It showed without contradiction that at the time of the defendant's arrest he was doing nothing more than walking on a public street, and that when the police officer commented to him that he had heard the defendant was doing wrong, the defendant denied it to him. A subsequent search was held improper, since the defendant had made out a prima facie case that the arrest was unlawful and the State offered no evidence to contradict it. Likewise, in *Cassell,* the defendant's testimony was the sole evidence submitted on the motion to suppress, and it established that he was doing nothing unusual at the time of his arrest. In the case at bar the police officer's testimony clearly articulated a legitimate purpose for the initial stop, *i.e.,* because the defendant was driving without lights, and this, together with the other testimony and absent any evidence that for some reason such a stop was unjustified, sufficiently established its validity.

Having determined that the initial traffic stop was justified, the de-

fendant's argument on appeal that the officer's observation of the empty gun holster was made while he was unlawfully detaining the defendant, and that therefore it could not provide a basis for a subsequent search and seizure, loses its basic premise. The defendant further urges, however, that the mere "presence of an empty holster * * * could give rise to no more than a suspicion that somewhere, sometime, Defendant may have carried or inserted a gun in it," that "[i]t did not qualify as probable cause that Defendant was violating the law by carrying a gun in his automobile," and therefore that the search precipitated by an observation of the holster was unreasonable because it was not incident to a valid arrest.

We first note, as the defendant correctly implies, that the initial stop alone was not necessarily grounds to conduct a search of his person and car, since a mere traffic violation was involved. (But *cf. United States v. Robinson*, 414 U.S. 218; *Gustafson v. Florida*, 414 U.S. 260.) But the ultimate search was not based only on the traffic stop. After the stop, and while the officer was questioning the defendant regarding the traffic offense, he noticed a gun holster on the defendant's person. He testified that the holster was in "plain view," and not the result of an intrusion which deprived the defendant of any justifiable expectation of privacy. It could thus legitimately provide a basis for further investigation or arrest. As explained in *Coolidge v. New Hampshire*, 403 U.S. 443, 466, "the police officer * * * had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." At that time the officer here conducted a search of the defendant's person and "went to his automobile [the door of which was open] and * * * looked under the front seat," and there the logical counterpart to an empty holster, a loaded handgun was found.

The question then is whether, at the time the holster was observed, the officer had a right to conduct the search made. The defendant apparently finds justification for this warrantless search only as one incident to arrest (see *Chimel v. California*, 395 U.S. 752), and he therefore questions whether probable cause existed for an arrest for other than the traffic offense at that time. He does not raise as an issue whether an arrest had actually been made at the time the search was conducted.

There is some difficulty in accepting the formula posited by the defendant as the only means of justifying the officer's actions here. A traffic stop was made. The defendant alighted from the car, and while being questioned by the officer, the gun holster was seen on his person. It was empty. Another person was seated in the front seat of the car. The car door was open. An empty holster cannot reasonably be con-

sidered a typical and innocuous item of wearing apparel. Surely it seems that for the officer not to pursue some type of inquiry would make him remiss, if not foolhardy. Various United States Supreme Court decisions have underscored the importance that the believed presence of a weapon might have in affecting more proscriptive concepts of warrantless search and seizure, especially where an auto is involved (*Cady v. Dombrowski*, 413 U.S. 433), and even where a "full-blown arrest" has not been effected (*Terry v. Ohio*, 392 U.S. 1; *Adams v. Williams*, 407 U.S. 143). Others have applied a less restrictive rationale for a search incident to arrest in the context of a custodial traffic arrest, at least in regard to the person of the arrestee. (*United States v. Robinson*, 414 U.S. 218; *Gustafson v. Florida*, 414 U.S. 260.) The penumbra of these decisions might well justify a police officer's limited inspection of the person and the area immediately accessible to the person under the peculiar circumstances presented here, even without a prior formal arrest for carrying a concealed weapon. Indeed, some Illinois decisions have justified a search of a driver and his vehicle incident to a traffic arrest, where the circumstances reasonably indicate that the police may be dealing not with the ordinary traffic offender, but with a criminal, in order to insure the safety of the police officers and to prevent an escape of the "might-be" criminal. *People v. Brown*, 38 Ill.2d 353, 231 N.E.2d 577; *People v. Thomas*, 31 Ill.2d 212, 201 N.E.2d 413.

Furthermore, the rationale for limiting a search incident to a mere traffic arrest has been the usual absence in that circumstance of (1) any evidence or fruits of the crime which must be seized to prevent their concealment or destruction, and (2) any weapons the arrestee might seek to use to resist arrest or effect his escape, the two traditional purposes for allowing a warrantless search incident to an arrest for a more serious offense. (See *Chimel v. California*, 395 U.S. 752, 762-63. See also *State v. Curtis*, 290 Minn. 429, 190 N.W.2d 631; *State v. O'Neal*, 251 Ore. 163, 444 P.2d 951; cited by Marshall, J., dissenting in *United States v. Robinson*, 414 U.S. 218, 245, 246.) Here, if a traffic arrest was made, and it appears that one was justified, the second of these traditional purposes would seem to clearly justify a warrantless search by the officer to protect himself once he saw the empty holster. And the search could properly encompass the area within the arrestee's immediate control (*Chimel v. California*, 395 U.S. 752, 763), which appears to have included here the place where the gun was found.

■■ Finally, even if we limit ourselves to the more constrictive framework presented by the defendant for justifying the search, *i.e.*, finding probable cause for the weapons arrest as the *sine qua non* to its validity, we hold the search proper. It is well settled that what constitutes reason-

able grounds on which probable cause is based depends on the surrounding facts and circumstances of each individual case. (*People v. Mills*, 98 Ill.App.2d 248, 240 N.E.2d 302.) And as stated in *People v. Jones*, 31 Ill.2d 42, 47, 198 N.E.2d 821, 823-24:

> "[E]xistence of reasonable cause which will justify an arrest without a warrant depends upon 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' (*Brinegar v. United States*, 338 U.S. 160, 175 * * *.) [And] * * * it has been observed that police officers 'often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals.' *People v. Watkins*, 19 Ill.2d 11, 19."

We feel the record adequately establishes that this standard was met. The peculiar and exigent circumstances presented to the officer, which we have adequately discussed above, were sufficient basis for him to effect an arrest and make the search.

The defendant also contends that he was not guilty beyond a reasonable doubt. It is asserted that there was no evidence that the gun was not the property nor in the possession of the woman who was a passenger in the car. Nor, it is contended, was there any showing that the defendant had knowledge of the gun's presence or that it was accessible to him. This argument requires no extended analysis on our part. While we agree that knowledge that the gun was in the car is essential to establish a crime (*People v. Liss*, 406 Ill. 419, 94 N.E.2d 320), scienter may and must often be proved by circumstantial evidence (*People v. McKnight*, 39 Ill.2d 577, 237 N.E.2d 488.) The gun was found, according to the officer's testimony, under the driver's seat. (See *People v. Zazzetti*, 6 Ill.App.3d 858, 286 N.E.2d 745.) The defendant was the driver, and he was wearing a holster. There was no evidence connecting the woman passenger to the gun in any way. We feel these facts sufficiently indicate not only scienter, but also that the weapon was immediately accessible to him (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(b)(4)), and under his immediate and exclusive control. We have examined the cases cited by the defendant and find they do not compel a different conclusion.

Finally, the fact that the officer could not remember if the defendant was wearing a top coat, whereas the defendant testified that he was, and that he reached into his top coat pocket to get his driver's license for the officer, does not as a matter of law create reasonable doubt that the officer observed a holster on the defendant's person. There was sufficient testimony by the officer, if believed, to establish that the holster

was in plain view, and the credibility of the witnesses is properly in the domain of the trier of fact. (*People v. Novotny*, 41 Ill.2d 401, 244 N.E. 2d 182.)

For these reasons the judgment is affirmed.

Affirmed.

ADESKO, P. J., concurs.

Mr. JUSTICE JOHNSON, dissenting:

I am unable to agree with the holding of the majority; therefore, I would reverse the trial court.

In a bench trial, the defendant was found guilty of unlawful use of weapons in violation of section 24—1(a)(4) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(4)). After a hearing in aggravation and mitigation, he was sentenced to 6 months in the House of Correction—Work Release.

The arresting officer, Raymond Krakausky, at the hearing on the motion to suppress, testified that he observed the defendant operating a green automobile southbound on Prairie from 43rd Street. The vehicle had no headlights or taillights. The defendant exited the car, produced a valid driver's license, and offered no resistance. Officer Krakauksy testified that the defendant said, during questioning, that he had just left a tavern and forgot to turn his lights on. Then the officer noticed an empty holster on the right side of defendant's pants, and, according to the officer, the holster was in plain view and was not detected after a search. The officer searched the defendant and the front seat of his car. On the basis of the preceding evidence, the trial judge denied the defendant's motion to suppress so a trial was held.

The defendant's attorney stipulated that Officer Krakausky's testimony on the motion to suppress would be the same at trial. The officer testified that he "went to the automobile" and discovered a gun when he looked under the front seat. Then he identified People's exhibit 1 as the gun taken from the car. The officer also testified that a female was riding with the defendant and she was sitting on the passenger's side of the front seat.

The stop in the instant case, at first blush, appears to be a routine traffic stop for a minor motor vehicle violation. The policeman testified that he stopped the defendant's car because he was driving without lights. I do not question the propriety of the initial stop since it is clearly permissible for a policeman to stop a motorist driving in a moving car with no lights to inspect the license of the car's driver, and to issue a warning or citation and, in the exceptional case to effectuate an arrest.

Consequently, I concur with the holding of the majority insofar as they hold that the officer's testimony established a proper purpose for the initial stop. In this case, however, the defendant produced a valid driver's license and offered no resistance. Although the defendant's car was stopped for a traffic violation, the record is devoid of any evidence that a citation of any kind was issued. Therefore, a routine stop for a minor traffic violation became the justification for searching the defendant's car and its contents.

I submit that the police officer in this case exceeded the permissible scope of a search of the person incident to a traffic stop for violation of a motor vehicle regulation. The majority concedes that the "initial stop" was not grounds to conduct a search of the defendant's person and car since a mere traffic violation was involved. This is to be expected since this is the law in Illinois: most traffic offenses do not justify a search. (*People v. Watkins* (1960), 19 Ill.2d 11, 166 N.E.2d 433. Compare *People v. Esposito* (1959), 18 Ill.2d 104, 163 N.E.2d 487; *People v. Berry* (1959), 17 Ill.2d 247, 161 N.E.2d 315.) Then the majority holds that the sighting of the gun holster in "plain view" provided a basis for further investigation. This may be so, but I am particularly concerned about the scope of the search in this case, and with the fact that the "plain view doctrine" is used as the underlying justification for the extensive search here. It converts the initial seizure, the stop, into a general exploratory rummaging of the defendant's person and property. It is this very evil, the general exploratory search, that the fourth amendment was promulgated to prevent, and in a warrantless search situation, as here, the general exploratory search is equally evil.

The question raised is how far does the sighting of the holster permit the officer to go without making the search unreasonable. The majority refers us to the proscriptive concepts of warrantless search and seizure which, I think, are particularly applicable in this case. I submit that a traffic stop is analogous to a "stop and frisk" situation—there is less than probable cause for an arrest, but under special circumstances an officer's apprehensions may give him a right to conduct a limited search of the driver's person for the officer's personal protection. (See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868; *Sibron v. New York* (1968), 392 U.S. 40, 20 L.Ed.2d 917, 88 S.Ct. 1889.) Although there may have been ample justification for the search of the traffic violator's person, the area under the front seat of the violator's car was clearly not an area within his control at the time of the initial search, since the defendant was standing outside the car. (*Chimel v. California* (1968), 395 U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034.) The sighting of the holster gave the officer a right to conduct a custodial search of the person, but

that is all. This should have been sufficient to allay any fears that the officer had since no weapon was found during the custodial search. But more importantly, custodial searches of the arrestee's person are the only searches permitted by cases making definitive statements about searches incident to traffic arrests. So in a fact situation, such as the one in the case under review, where there is less than probable cause to arrest, the scope of the search can be no greater than that permitted in cases where a search is conducted incident to a traffic arrest. Searches, like the one that was conducted here, that are general and without limits are per se unreasonable and violative of the fourth amendment of the United States Constitution.

I think the *United States v. Robinson* (1973), 414 U.S. 218, 38 L.Ed.2d 427, 94 S.Ct. 467, must be distinguished from the instant case since the majority cites *Robinson* as authority for the constitutionality of the stop and subsequent search in this case. The Supreme Court held, in *Robinson*, in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the fourth amendment, but is also a "reasonable" search under that amendment. If the defendant, in the instant case, had been stopped while driving and a license inspection revealed a revoked operator's permit, he would have been arrested. That was not the case here. The defendant emerged from his car and produced a valid operator's license. In *Robinson* the arresting officer conducted a search subsequent to a custodial arrest. In the case under consideration, the search preceded the arrest. The motion to suppress should have been granted because the evidence, a gun, was the fruit of an illegal search and seizure. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407.) Therefore, the arrest cannot be justified by what the subsequent search disclosed. (*Henry v. United States* (1959), 361 U.S. 98, 4 L.Ed.2d 134, 80 S.Ct. 168.) Moreover, the officer never indicated, during the hearing on the motion to suppress, or during the trial, that he was in danger or feared that he would be attacked. More importantly, the place where the gun was found, under the front seat of the defendant's car, was clearly not an area within the traffic violator's immediate reach.

Finally, *Robinson* permits nothing more than custodial searches, searches of the arrestee's person, not unreasonable intrusions into people's cars to check out suspicions.

In *People v. Jordan* (1973), 11 Ill.App.3d 482, 297 N.E.2d 273, a case where this court was concerned with the scope of a search for a traffic violation, the same result was reached. In *Jordan* the defendant was stopped for making an illegal left hand turn, he could not produce a driver's license, but only a prior driving citation. He was placed under

arrest so he could accompany the officer to the station to post bond. The defendant was given a pat-down search prior to being placed in the squad car which was to transport him to the police station. At that time, the officer discovered a small vial of pills which were analyzed as a depressant drug. The court points out that a more thorough search of a man seized in commission of a felony would be permitted than of a man who failed to have a driver's license. The court then holds that the scope of the search was unreasonable since the "pat-down" search for the officer's safety revealed nothing more than a small vial, similar to the one in which a pharmacist puts pills, in an "apparently innocuous place." 11 Ill.App.3d at 487, 297 N.E.2d at 276.

This question has been considered by several State and Federal courts; the vast majority are in agreement with *Jordan* and have held that absent special circumstances a police officer has no right to conduct a full search of the person and his property incident to a lawful arrest for violation of a motor vehicle regulation. *United States v. Robinson* (1973), 414 U.S. 218, 38 L.Ed.2d 427, 94 S.Ct. 467.

In *State v. Curtis* (1971), 290 Minn. 429, 190 N.W.2d 631, police officers stopped a car which had defective tail-lights and which had made an illegal right turn. The officers decided to take the driver down to the station house and searched him for weapons before putting him in the squad car. One of the officers felt the outside of the driver's pockets and reached inside, resulting in the discovery of a package of marihuana. The Minnesota Supreme Court held the search unlawful. The court stated that the validity of a search for weapons following a traffic arrest depends on whether the officer had reasonable grounds to believe such a search was necessary for his own safety or to prevent an escape. 290 Minn. at 437, 190 N.W.2d at 636.

In *People v. Marsh* (1967), 20 N.Y.2d 98, 281 N.Y.S. 789, 228 N.E.2d 783, the court arrived at the same result as that in the preceding case when presented with a similar fact situation. There the defendant was arrested pursuant to an arrest warrant issued in 1965 for a traffic violation, speeding committed in 1963. Immediately upon making the arrest, the police officer searched the defendant, took from his pocket a book of matches and, opening the match cover, found a sheet of paper which implicated him in the playing of policy. He was thereafter charged, tried, and convicted for possession of a policy slip. (N.Y. Penal Law § 975 (McKinney 1967.) On appeal, the defendant complained about the denial of his pretrial motion—which was renewed and denied at the trial—to suppress the evidence uncovered in the search by the arresting officer. The court held that a police officer is not authorized to conduct a search every time he stops a motorist for speeding or some other ordi-

nary traffic infraction. The court went on to say, as a general rule, when an individual is lawfully arrested, the police officer may conduct a contemporaneous search of his person "for weapons or for the fruits or implements used to commit the crime" (*Preston v. United States* (1964), 376 U.S. 364, 367, 11 L.Ed.2d 777, 84 S.Ct. 881, 883), we do not believe that the legislature intended the rule to cover arrests for traffic violations. 20 N.Y.2d 98, 281 N.Y.S. 789, 228 N.E.2d 783.

The tenth circuit has also stated that it is in complete agreement with the prevailing Federal and State authority which condemns the search of persons and automobiles following routine traffic violations. Such searches can only be justified in exceptional on-the-spot circumstances which rise to the dignity of probable cause. *United States v. Humphrey* (10th Cir. 1969), 409 F.2d 1055, 1058.

I am of the opinion that searches of persons and automobiles must be for something more than mere traffic violations, otherwise, citizens' constitutional rights will be continuously and unnecessarily violated. (See *People v. Johnson* (1973), 14 Ill.App.3d 254, 302 N.E.2d 430.) In *People v. Tate* (1967), 38 Ill.2d 184, 230 N.E.2d 697, the court stated that a search must be lawful to justify the seizure of evidence. The court went on to say that a search was not justified merely because the defendant was stopped for a traffic offense. It is necessary that the circumstances indicate that the police may be dealing not with the ordinary traffic violator but with a criminal. (*People v. Davis* (1965), 33 Ill.2d 134, 210 N.E.2d 530.) The defendant, in the case under consideration, was cooperative, since he complied with all the officer's requests, and offered no resistance. Consequently, there was no reason for the officer to suspect he was in danger or that the defendant was a criminal. Therefore, given the situation that confronted this policeman, I think that a warrantless search of the automobile was not justified.