THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES M. AGANS, Defendant-Appellant.

(No. 12240;

Fourth District—November 27, 1974.

CRAVEN, J., concurring in part and dissenting in part.

John F. McNichols, of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (James W. Jerz and Martin P. Moltz, both of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Defendant was convicted after a jury trial of the offense of theft of property over $150 and was sentenced for an indeterminate term of imprisonment of not less than 2 nor more than 6 years, which sentence was to run consecutively to any time served by the defendant for violation of parole on a previous conviction for armed robbery.

The evidence introduced by the prosecution indicated that the defendant was a passenger in an automobile driven by his brother, Glen Agans, and that the car was stopped by a police officer for running a stop sign. Upon approaching the car, the officer detected the odor of alcohol and observed the occupants "squirming around" in the car. The driver of the car stepped outside on the orders of the police officer who then observed a cash register on the floor at the passenger side of the automobile, where the defendant was sitting. The cash register was partially covered by a towel, and Glen Agans told the officers he didn't know much about the cash register but that it was in the possession of the passenger. The defendant stated to the officer that the cash register came from a Red Bird gas station where he worked and that he was taking it home at the request of the manager who did not want to leave it there because of some recent break-ins at the service station. He further told the officer that a towel was placed over the cash register to protect it from getting scratched. The defendant and his brother were taken into custody, and subsequently the police officers were informed that the cash register had been stolen from a Sunoco station.

Glen Agans testified that he had previously entered a guilty plea and stated that he was driving the car, that he and the defendant had stopped at the Sunoco station twice during the evening of the theft, the

first time to make a telephone call and the second time for the defendant and himself to buy candy and to use the bathroom. Glen Agans further testified that the defendant carried out the cash register and put it in the car the last time the two of them went to the Sunoco station.

Robert Pasenko testified for the defendant and stated that he was with the defendant and his brother from approximately 8:30 P.M. to about 3 A.M. on the night of the theft and that all of them were drinking beer and driving around in Glen Agans' car. He further testified that they stopped sometime after midnight at the Sunoco station to call a girl friend and that subsequently they went to her house where the defendant was so drunk he could hardly walk. Finally, Pasenko testified that the defendant and his brother left and he stayed at his girl friend's home.

The defendant testified substantially the same as Pasenko and further testified that he and his brother left Pasenko at his girl friend's home because the two of them had gone out there on the mistaken belief that two other girls were visiting in the home. He stated that he was feeling so bad he got in the back seat of the car and laid down with a bottle to listen to the car radio. He further testified that he went to sleep or passed out; that he later awoke and moved to the front seat of the car and either passed out or went to sleep again; and that the next thing he remembers was his brother shaking him and red lights flashing. He testified that he then reached under the seat and got his towel out and tried to cover the cash register, but that he did not know how it happened to be in the car and that he had not removed it from the station.

The defendant further testified that at the time the police officers questioned him he made up the story about obtaining the cash register from the Red Bird service station. He admitted he had previously been arrested for armed robbery. He stated he was free from debt but that his brother owed $2000. He testified that he had made up the story about the cash register because he knew he would be considered an accomplice because he knew his brother had no reason for having a cash register.

The defendant raises three issues on appeal:

1. Whether he was proven guilty beyond a reasonable doubt of the offense of theft, since it was never sufficiently established that he, rather than his brother, took the property in question.

2. Whether the remarks of the prosecutor during his closing argument to the jury were so improper and prejudicial that they denied the defendant a fair trial.

3. Whether a consecutive term of imprisonment of not less than 2 nor more than 6 years for the offense of theft of property having a value exceeding $150 is excessive and should be reduced.

Defendant argues that there must be a reasonable doubt as to his

guilt because the only evidence sufficient to convict him was the suspect testimony of his brother, who was an accomplice.

■■ It is well settled that a conviction of theft can be sustained on circumstantial evidence alone if the character of said evidence convinces the trier of facts of the defendant's guilt beyond a reasonable doubt. (*People v. Stevenson,* 107 Ill.App.2d 441, 246 N.E.2d 309; *People v. Mills,* 98 Ill.App.2d 248, 240 N.E.2d 302.) Further, in *People v. Huff,* 29 Ill.2d 315, 194 N.E.2d 230, it was held that although circumstantial evidence must not give rise to any reasonable hypothesis consistent with the innocence of the accused, this does not mean that the trier of fact must search out potential explanations compatible with innocence and elevate them to the status of reasonable doubt.

In the instant case, the evidence is strongly indicative of the fact that the defendant and his brother committed the theft. An employee of the gas station testified that he discovered the cash register was missing at about 4 A.M. on the night in question. The owner of the station later identified the cash register as being the same as the one recovered by the police officers from the car in which the defendant and his brother were riding, and he further identified the money and the receipts contained in the cash register. When questioned by Officer Schultz when they were first stopped, Glen Agans stated that the cash register was in the possession of the defendant and that he saw his brother take the cash register from the Sunoco station and put it into the car he was driving.

The defendant informed Officer Schultz that the cash register belonged to a Red Bird station where he was employed. Defendant further told the officer that he placed the towel over the cash register to prevent it from being scratched. Defendant, in his brief, attempts to escape liability for the crime on the basis that it is possible that Glen Agans actually took the cash register.

We are of the opinion that there is sufficient evidence to sustain the conviction in this case. The record is barren of any evidence that Glen Agans took the register; however, had it been established that Glen Agans did take the cash register, the defendant is, nevertheless, guilty under the theory of accountability within the scope of section 5—2 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 5—2).

■■ The defendant's contention that the testimony of Glen Agans is suspect because he is an accomplice does not alter our opinion as to the sufficiency of evidence. The uncorroborated testimony of an alleged accomplice is sufficient to convict if it satisfies a jury beyond a reasonable doubt. (*People v. Baker,* 16 Ill.2d 364, 158 N.E.2d 1; *People v. Field,* 13 Ill.App.3d 74, 299 N.E.2d 754.) The jury in this case had

ample reason to believe the testimony of Glen Agans. His testimony was consistent with the story given to the police, whereas defendant's version varied substantially from the time of arrest to and including the time of the trial. Defendant's testimony that he was taking the cash register home on behalf of his manager to protect it from possible theft varies widely from his courtroom testimony that he didn't know how he came into possession of the cash register. Defendant contended that he was so drunk that he didn't remember the events of the evening, but he was able to tell the officer apprehending them a very specific reason for his being in possession of the cash register, and which story he later repudiated.

■■ Defendant contends the prosecution's closing argument was prejudical and deprived him of a fair trial and cites the following statements made by the prosecutor:

1. "Glen Agans has already entered a guilty plea to the crime alleged in the indictment. This defendant for reasons known only to himself wanted a jury trial and wanted you to determine his guilt or innocence.

2. \* \* \* they were in it together. They were brothers. They were drinking. They went to the service station once, once used the phone with Mr. Pasenko. They got the lay of the land. They saw how difficult it was to look back in this bay and see out the door. Mr. Agans planned the crime, and then they came back with just the two of them. They got rid of Mr. Pasenko. Mr. James Agans came back and went in there and took the cash register.

3. First of all, where are these girls that Agans and Pasenko talk about? Oh, we were with all these girls, and we did this, and we did that, and we were drinking. Why don't they come in here and testify.

    All Mr. O'Keefe and Mr. Agans have to do is get a hold of them. If they don't want to come, they can go over to the Court's office and get a subpoena and have the Sheriff serve it on them and bring them in here and let them testify.

    And I suggest that these girls are a figment of Mr. Agans' imagination."

It is apparently recognized by all parties concerned that it would have been preferable had the prosecutor not made the first of the foregoing statements in his closing argument; however, it must be noted that defense counsel made no objection to any of the prosecutor's remarks nor did he raise any objection to such remarks in his motion for a new trial; consequently, if this court were to reverse conviction on this case based

on such statements, it would be necessary to reverse them under the provisions of Supreme Court Rule 615.

We feel that the first of the foregoing statements does not constitute plain error, although it does raise the implication that everyone except the defendant realized that he was guilty.

The jury was amply instructed as to the law governing the trial that they were participating in, and it is difficult to believe that such a remark would in any way prejudice their consideration of the case. In the conduct of a spirited trial, the jury soon ascertains that a trial is an adversary proceeding, that the prosecutor and defense counsel are strenuously putting forth their views as to the guilt and innocence of the accused and that statements of counsel are not evidence.

We are of the opinion that the second objection to prosecution's argument is without foundation because in this part of the argument the prosecutor is merely presenting his theory of the case, and his theory of the case is sustained by the testimony of Glen Agans.

■■ We are of the further opinion that the third objection to the closing argument of the prosecution is without foundation because it appears from the record that this statement was made in response to the closing argument of the defense counsel when he referred to the testimony of the defendant and Mr. Pasenko concerning the girls whom they testified were called and went over to see.

Finally, defendant contends his sentence was excessive and should be reduced. We find that this basis of appeal is without foundation. The defendant was at the time of trial on parole for a prior conviction of armed robbery, committed approximately 4 years prior to the present conviction. His conviction of the present crime constitutes a violation of parole for the offense of armed robbery. Defendant complains that the disparity in sentence between him and his brother was unwarranted by the facts; however, his brother's conviction in this case does not constitute a parole violation and his only prior record was under the Juvenile Court Act.

Defendant also contends that the trial judge imposed an excessive sentence on the mistaken belief that defendant had shot someone. This contention is not borne out by the record. The trial judge did make reference to the defendant having shot someone while committing a prior crime; however, this belief was corrected immediately by both defense counsel and the prosecution.

■■ Finally, defendant questions the propriety of imposing a consecutive sentence in this case. The imposition of consecutive sentences is governed by the provisions of section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4), which provides "Concurrent and Consecutive Terms of Imprisonment.

* * *

(b) The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court may set forth in the record.

* * *

(e) In determining the manner in which consecutive sentences of imprisonment, one or more of which is for a felony, will be served, the Department of Corrections shall treat the offender as though he had been committed for a single term with the following incidents:

(1) the maximum period of an indeterminate term of imprisonment shall consist of the aggregate of the imposed indeterminate terms plus the aggregate of the imposed determinate sentences for misdemeanors subject to paragraph (c) of this Section;

(2) the parole term shall consist of the parole term under Section 5—8—1 for the most serious of the offenses involved;

(3) the minimum period of imprisonment shall be one year or the aggregate of the minimum period of imprisonment imposed by the court, which ever is greater, subject to paragraph (c) of this Section; and

(4) the offender shall be awarded credit against the aggregate maximum term and the aggregate minimum term of imprisonment for all time served in an institution since the commission of the offense or offenses and as a consequence thereof."

. Based on the evidence in this case we are of the opinion that the court was justified in imposing a consecutive sentence, having regard to the nature and circumstances of the offense and the history and character of the defendant. The defendant had previously been found guilty of committing the offense of armed robbery and was in this case found guilty of theft while on parole from the first conviction.

The question of computation of the term of imprisonment for the consecutive sentence given defendant in this case is governed by the provisions of section 5—8—4(e) of the Unified Code of Corrections set out in this opinion; therefore, this imposition of such sentence was permissible according to the statutes and was warranted by the evidence.

The opinion of the trial court is affirmed.

Affirmed.

SIMKINS, P. J., concurs.

Mr. JUSTICE CRAVEN concurring in part and dissenting in part:

I agree with the majority opinion that this conviction should be affirmed. I am not in agreement that the sentence imposed should be consecutive. At the time of this conviction, the defendant was on parole for a prior conviction for armed robbery committed some 4 years prior to the present conviction. The offense here committed is a Class 3 felony, punishable by a minimum term of 1 year and a maximum term of 10 years, and the sentence alternatives available to the trial court for this offense were not utilized if, by reason of the defendant's prior record, the trial court was under the impression that the defendant needed a longer period of incarceration. Consecutive sentences are not to be imposed unless the trial court, having regard to the nature and circumstances of the offense and the history and character of the defendant, is of the opinion that such term *is required* to protect the public from further criminal conduct by the defendant. In this case, since the trial court did not utilize either the highest possible minimum sentence, or the highest possible maximum sentence, the use of a consecutive sentence offends against the statutory proscription.

This seems to be rather clearly indicated by the following colloquy that took place at the conclusion of the hearing on aggravation:

"THE COURT: Was your previous trial a plea of guilty or was it a jury trial?

MR. AGANS: It was a plea of guilty.

THE COURT: You plead guilty to it?

MR. AGANS: Yes, sir.

THE COURT: Well, that's an admission that you did it, or you wouldn't have plead guilty.

I'd like to give you a break. I feel sorry for you.

MR. AGANS: I know it's impossible now, sir.

THE COURT: I feel sorry for you. Now I'm going to give you a break. You have to go to the penitentiary.

MR. AGANS: Yes, sir.

THE COURT: But I'm going to give you a break. I'm going to sentence you to a minimum of two years and a maximum of five. And I think that's a break.

I don't know how you feel and the people back there feel, but I think that's a break. There isn't any doubt in my mind about it.

Okay, that'll be the sentence of the Court.

MR. KASTEN: Your Honor, will that run concurrently or consecutively with the sectence [*sic*].

THE COURT: No, it's going to be consecutively with any sentence he's got.

Let's see, it'll have to be—it'll have to be two to six by our appellate rules, I think, that the minimum should be—they're—they're holding the minimum should be a third of the maximum.

MR. KASTEN: Right, three to one."

In view of the foregoing, I dissent from that portion of the opinion approving consecutive sentence.