THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* TYRONE THOMPSON, Defendant-Appellee.

First District (4th Division)   No. 62125

Opinion filed April 28, 1976.

JOHNSON, P. J., dissenting.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and David A. Novoselsky, Assistant State's Attorneys, of counsel), for the People.

Dean S. Wolfson and Francis E. Andrew, both of Chicago, for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Tyrone Thompson, was arrested on November 18, 1974, and charged by complaint with possession of a controlled substance in violation of section 402 of the Illinois Controlled Substances Act. (Ill. Rev. Stat. 1973, ch. 56½, par. 1402.) At a pretrial hearing, the defendant moved to suppress a plastic bag containing heroin which the police recovered from him subsequent to the latter being placed under arrest. After hearing the testimony of the defendant as well as one of the Chicago police officers who arrested him, the trial judge granted the motion to suppress on the basis that there was no probable cause to justify the warrantless arrest of the defendant.

On appeal, the State contends that (1) since a reliable informant proffered specific information concerning the defendant and (2) such information was verified by the police prior to the defendant's arrest, there was probable cause to arrest and the trial court erred in granting the defendant's motion to suppress.

A review of the record reveals that on November 18, 1974, at 2 p.m., Chicago police officer Robert Lopez met with an informant who told him that the defendant had just left his apartment and was going to purchase heroin on the south side of Chicago. Besides indicating that the defendant was driving a 1970 Cadillac with license plate number UX 4828, the informant further related that the defendant would return with the narcotics to his own apartment located at 5525 North Winthrop at 3:30 p.m. Subsequent to receiving such information, Officer Lopez and his

partner proceeded to the defendant's residence and instituted direct surveillance on the premises. At approximately 3:20 p.m., the officers observed the defendant and his passenger, one Estric Wells, in the Cadillac described by the informant. The officers then curbed the automobile, arrested the defendant and Wells, searched them, and found heroin on their persons. Thereafter, both individuals were charged with possession of a controlled substance in violation of section 402 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1402).

On December 12, 1974, a pretrial hearing was held wherein both the defendant and Wells moved to suppress the narcotics. After both the defendant and Wells respectively testified that the police stopped them for a robbery that allegedly had been committed, Officer Lopez took the stand and recounted what transpired on the date in question. He indicated that the same informant had on a prior occasion furnished him information concerning the defendant which led to the recovery of one ounce of heroin and two guns as well as the latter's arrest. Officer Lopez further stated that he knew the defendant since he executed a search warrant for the latter's apartment in connection with another offense for which the defendant was arrested but ultimately was discharged due to a "typographical error" in the search warrant. Upon conclusion of such testimony, the trial court, although conceding the reliability of the informant as well as that the defendant was in possession of the contraband on the day in question, sustained the defendant's motion on the basis that there was no way the informant could tell Officer Lopez that the defendant would have narcotics on him since the informant did not know if a sale took place.

■■ The sole issue on review is whether the information supplied by the informant constituted "probable cause" within the purview of the fourth amendment so that the arrest of the defendant, although without a warrant, would be lawful and the subsequent search of the defendant's person and the seizure of the heroin would be valid as an incident to such lawful arrest. In determining the sufficiency of an informant's tip as it relates to probable cause, a bifurcated standard was enunciated by the United States Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509. This test, which initially pertained to the sufficiency of an affidavit for a search warrant but was subsequently construed to include situations involving warrantless arrests *(e.g., McCray v. Illinois,* 386 U.S. 300, 304, 18 L. Ed. 2d 62, 67, 87 S. Ct. 1056; *Beck v. Ohio,* 379 U.S. 89, 96, 13 L. Ed. 2d 142, 147-48, 85 S. Ct. 223; *Wong Sun v. United States,* 371 U.S. 471, 479-82, 9 L. Ed. 2d 441, 450-52, 83 S. Ct. 407), requires the trial court to be informed of "[1] some of the underlying circumstances from which the informant concluded that the narcotics

were where he claimed they were, and [2] some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, [citation] was 'credible' or his information 'reliable.' " *Aguilar v. Texas,* 378 U.S., 108, 114-15, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509.

Applying such legal edict to the case at bar, it is evident that the second prong of the *Aguilar* test was satisfied since the trial court conceded at the pretrial hearing that the informant was reliable. Thus, the crux of the instant appeal evolves around whether the information supplied by Officer Lopez at the suppression hearing met what has been classified as the "basis of knowledge" prong of the *Aguilar* test. *(E.g., State v. Rigsbee* (S.D. 1975), 233 N.W.2d 312, 314; *People v. Williams* (1975), _____ Colo. _____, 541 P.2d 76, 78; Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer,* 25 Mercer L. Rev. 741, 747 (1974).) In response to this pivotal question, the State primarily relies on the United States Supreme Court decision in *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329, as being dispositive of its contention that there were sufficient underlying circumstances from which the informant could conclude there was criminal activity afoot. The defendant, on the other hand, maintains that the instant case is more analogous to *People v. King,* 12 Ill. App. 3d 355, 298 N.E.2d 715, and that the State's reliance on *Draper* is misplaced as well as in contradistinction to *Aguilar* and its progeny since the incriminating conclusion by the informant that the defendant would possess heroin was not factually substantiated. We are not in accord with the defendant's contentions.

■■ Although the standard promulgated in *Aguilar* is still recognized as the necessary prerequisite to establish probable cause in cases involving warrantless arrests, such standard has been explicated by the decision of *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584. As far as the "basis of no knowledge" prong is concerned, the United States Supreme Court in *Spinelli* deviated from the rigid application of *Aguilar* and indicated that this prong could be satisfied not only by (1) an express statement by the informant that the incriminating information was derived from personal observation, but also by (2) the informant producing a description of the criminal activity in sufficient detail so that a trial judge could discern whether "he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *(Spinelli v. United States,* 393 U.S. 410, 416, 21 L. Ed. 2d 637, 644, 89 S. Ct. 584.) Moreover, with regard to this latter alternative which relies on the self-verification of the informant, the Court cited the detail provided by the informant in *Draper v. United States,* 358 U.S. 307, 3 L.

Ed. 2d 327, 79 S. Ct. 329, as a "suitable benchmark" for ascertaining whether a particular description was sufficiently detailed to establish the accused's criminal activity.

In *Draper*, a previously reliable informant told a federal narcotics agent that the defendant "was peddling narcotics to several addicts" in Denver, Colorado. Four days later, he informed the agent that the defendant had gone to Chicago and was coming back by train on either of two mornings with several ounces of heroin. He also gave a detailed physical description of the defendant, his clothing, the bag he would be carrying and his peculiarly rapid walk. On the second morning, the agent observed a man (the defendant) of the exact description proffered by the informant alight from a train coming from Chicago. Thereafter, the local police, acting without a warrant, arrested the individual and recovered the heroin subsequent to searching him. On appeal, the United States Supreme Court affirmed the defendant's conviction stating that since every facet of the information supplied by the informant was personally verified, the agent had "reasonable grounds" to believe that the remaining unverified information, namely, that the defendant would be possessing heroin, was also true. *Draper v. United States*, 358 U.S. 307, 313, 3 L. Ed. 2d 327, 332, 79 S. Ct. 329.

■■ Considering the information supplied by the informant in the instant case, we believe that the "self-verifying" method delineated in *Spinelli* for satisfying the "basis of knowledge" prong of the *Aguilar* standard was unequivocally met. Analogous to the decision in *Draper*, the instant case involved a previously reliable informant who informed a law enforcement official that (1) a certain individual, (2) using a particular mode of transportation, (3) would arrive at a certain destination (4) at a particular time and (5) would be in possession of narcotics. Besides the fact that the first four items of information were personally verified in both cases by the respective informants, we agree with the State that the specificity contained in such information in the instant case not only exemplified, but surpassed the essential quantity and quality requirements of *Draper* so as to provide a stronger basis for the arresting officer to have probable cause to believe the defendant possessed heroin. For example, whereas the law enforcement . officials in *Draper* were relying on a mere description of the accused, the police officer, who eventually arrested the defendant in the instant case, personally knew him as a result of a prior official encounter approximately two weeks earlier. Moreover, in *Draper,* the informant only indicated that the defendant would be arriving by train from Chicago. Here, the informant not only described the make and year of the automobile the defendant would arrive in, but he also gave an exact description of the license plates on such vehicle. Further, while the informant in *Draper* did not know exactly

what day or time the accused would arrive, the informant in the present case specified the date and time of the defendant's arrival which, as Officer Lopez testified at trial, was essentially correct. These definitive statements clearly evince that the informant's tip was so replete with detail that it is inconceivable that such information could be the product of a casual rumor. We therefore conclude that Officer Lopez did have "reasonable grounds" to believe that the remaining unverified bit of information concerning the defendant's possession of heroin was likewise true and, coupled with the trial court's recognition of the informant's reliability, probable cause within the context of *Aguilar* and its progeny did exist, thus warranting a denial of the defendant's motion to suppress.

Finally, the defendant's reliance on *People v. King,* 12 Ill. App. 3d 355, 298 N.E.2d 715, is also without merit since that decision is factually distinguishable from the instant case as well as *Draper* in two important respects. In the first place, the decision in *King* involved a search of an automobile and not of a person. This factual disparity is relevant because even though probable cause must be shown regardless of the purpose of the search, the circumstances which give rise to probable cause to search an automobile with a warrant entail other considerations besides those used in ascertaining probable cause for the warrantless search of a person or premises. (See *Chambers v. Maroney,* 399 U.S. 42, 51, 26 L. Ed. 2d 419, 428, 90 S. Ct. 1975; *Carroll v. United States,* 267 U.S. 132, 153, 69 L. Ed. 543, 551, 45 S. Ct. 286.) Secondly, the defendant's contention that the informant's tip in *King* is strikingly similar to that in *Draper* and the instant case is not plausible. Whereas the information supplied the police in *Draper* and the case at bar was specific and detailed so as to satisfy the "self-verification" alternative enunciated in *Spinelli,* the contents of the informant's tip in *King* were extremely vague in that (1) there was not a definitive description of the individuals whom the police were to look for, (2) there was no mention of a specific location where the alleged offenders would arrive, and (3) the informant's description of the automobile did not identify the make, year, nor license plates. Based on these factual incongruities and inadequacies prevalent in *King,* we therefore believe that such decision is not analogous to *Draper* nor the case at bar so as to dissuade our decision to reverse the granting of the defendant's motion to suppress.

For the foregoing reasons, the order of the trial court granting the defendant's motion to suppress is therefore reversed.

Reversed.

ADESKO, J., concurs.

Mr. PRESIDING JUSTICE JOHNSON, dissenting:

I respectfully dissent from the opinion of the majority and would affirm the trial court's decision granting the defendant's motion to suppress.

*Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, was decided 5 years after *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329, on which the majority relies, and its continued vitality is apparent from a reading of *Spinelli v. United States* (1968), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584. The *Aguilar* test provides that an informant must disclose some of the underlying circumstances from which he concluded that the narcotics were where he claimed they were. In my opinion, this "second prong" is effectively reduced to a nullity if it can be satisfied by a mere physical description of the alleged offender and his car. I find nothing which would tend to indicate that the informant based his tip on facts or circumstances rather than suspicion, belief, or a mere conclusion. (*Aguilar v. Texas* (1964), 378 U.S. 108, 113-14, 12 L. Ed. 2d 723, 84 S. Ct. 1509.) There is also no indication of whether the tip was based on personal knowledge of the informant or whether he received it indirectly.

The Supreme Court explicated the *Aguilar* principles in *Spinelli v. United States* (1968), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584. There it was determined that an informer's tip was inadequate under the *Aguilar* test because *inter alia* it did not sufficiently state the underlying circumstances from which the informant had concluded that the petitioner was running a bookmaking operation. The court stated that in the absence of a statement detailing the manner in which the information was gathered, the tip must describe the accused's criminal activity in sufficient detail so that he is relying on something more substantial than casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

The court cited *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329, as a "suitable benchmark" and noted that the informant had given such detail that a magistrate could reasonably infer that the informant had gained his information in a reliable way. In my opinion, *Draper*, as a benchmark, represented the outer limit on finding probable cause in a search and seizure case. The quality of information provided in the instant case simply did not reasonably imply that the informant gained his information in a reliable way. If it did, whenever an ex-offender made a 1-hour trip in his own car, he could be subject to arrest if a previously reliable informant speculated that he was receiving drugs and disclosed this to the police. As Justice Douglas wrote in dissent in *Draper v. United States* (1959), 358 U.S. 307, 314-15, 3 L. Ed. 2d 327, 79 S. Ct. 329:

"A rule protective of law-abiding citizens is not apt to flourish where its advocates are usually criminals. Yet the rule we fashion is for the innocent and guilty alike. If the word of the informer on which the present arrest was made is sufficient to make the arrest legal, his word would also protect the police who, acting on it, hauled the innocent citizen off to jail."

I believe that because this arrest was in violation of the fourth amendment, the trial court was correct in granting the motion to suppress.