THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* GEORGE ESTRADA, Defendant-Appellee.

Second District   No. 77-452

Opinion filed February 7, 1979.

Patricia Piper, State's Attorney, of Mt. Carroll (Phyllis J. Perko and William E. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mary Robinson and Alan D. Goldberg, both of State Appellate Defender's Office, of Elgin, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The defendant, George Estrada, was arrested on April 9, 1977, and charged with the unlawful possession of cannabis found in his car. Defendant filed a motion to suppress evidence on the grounds that the search of his car and the seizure of the cannabis violated his fourth amendment rights. On July 6, 1977, the trial court entered an order that

the initial stop of the defendant's car was improper and that all evidence flowing from that stop should be suppressed. The State has appealed from that order.

On the evening of April 9, 1977, two Illinois State troopers, Bein and Mottin, were performing a "vehicle check" near the intersection of Illinois Route 78 and U.S. Route 52. The troopers would stand in the highway and wave cars over as they approached. One trooper would check out one car to see if its headlights, tail lights and turn signals were operating properly and whether its tires were in proper condition, while the other trooper attended to the next car. The cars "were stopped on the basis of whoever came through * * * [an officer] would inspect one vehicle and turn him loose and whatever vehicle came along next would be the next vehicle to be checked." Defendant's car was among those motioned to the side of the road by Trooper Bein. After the trooper walked to the side of the car to advise defendant of the vehicle check, a series of events occurred which culminated in the arrest of defendant for possession of cannabis. We see no need to discuss all of those events in detail but merely note that we concur with the trial court that the actions of the police subsequent to the stop of defendant's auto were constitutional.

Before discussing the legal issues connected with the stop a factual comment is in order. This case involves a systematic, nonarbitrary type of check (hereinafter a systematic check). This can be distinguished from a discretionary or spot check (hereinafter a spot check) which involves the selection by the police of a single car or a few cars to check. It is not clear from the record whether the traffic was light enough for the troopers to stop every car passing their checkpoint or whether some cars passed by while the troopers were both occupied, but it is irrelevant whichever was the case. It is not necessary for a checkpoint to stop every car in order to be systematic but only for officers to be following some pattern that will minimize their discretion in chosing whether to stop a particular auto.

Thus, the only issue before us is whether Illinois police can systematically stop cars at a particular point in order to check safety equipment.

■■ The legality of this type of safety check is dependent on two questions. (1) Does such a procedure conflict with the fourth amendment of the United States Constitution's prohibition against unreasonable searches and seizures?[1] (2) Even if such a procedure is constitutional, does

---

[1] Unreasonable searches and seizures are prohibited by the Illinois Constitution (Ill. Const. 1970, art. I, §6) as well as by the more familiar fourth amendment of the United States Constitution. Although we can theoretically interpret our State Constitution to prohibit searches and seizures permissible under the United States Constitution, we see no reason for doing so. Thus, for purposes of this opinion, the State and Federal provisions prohibiting unreasonable searches and seizures are co-extensive and comments made about the United States Constitution would also apply to the Illinois Constitution.

Illinois State law authorize its use by the police in this State? It is important to recognize that these are two basically separate questions. The trial court did not rule on the constitutional question but rather held the stop invalid strictly on the basis of the second question, emphasizing the absence of any Illinois statute expressly authorizing police to stop vehicles to check safety equipment. It seems advisable, however, for us to discuss both questions.

Even a brief stop of a car to check its safety devices falls within the ambit of the fourth amendment. That amendment applies to all seizures of a person, no matter how brief. Whenever a police officer restrains the freedom of a citizen to walk away, he has seized that person. See *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574; *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

Only California has dealt specifically with the constitutionality of checkpoints for safety inspections. In *People v. DeLaTorre* (1967), 257 Cal. App. 2d 162, 64 Cal. Rptr. 804, the California Court of Appeals upheld the constitutionality of a California statute giving police the right to inspect for safety defects. *DeLaTorre* is very similar to the case before us. Although it involved an express statutory authorization not present in Illinois, that difference does not alter the fact that the California court found such stops to be constitutional.

■■ In Illinois it is well settled that a police officer may constitutionally stop an auto and briefly question its occupants when the officer reasonably infers from the circumstances that one of them is committing, is about to commit or has committed an offense. (See Ill. Rev. Stat. 1977, ch. 38, par. 107—14; *Terry v. Ohio.*) Such an offense can be related to the condition of the auto itself. Stops for no brakelights (*People v. Cannon* (1974), 18 Ill. App. 3d 781, 310 N.E.2d 673), a defective headlight (*People v. Lichtenheld* (1976), 44 Ill. App. 3d 647, 358 N.E.2d 694), no lights (*People v. Tilden* (1974), 26 Ill. App. 3d 447, 325 N.E.2d 431), and no license plates (*People v. McConnell* (1977), 48 Ill. App. 3d 355, 362 N.E.2d 1280; *People v. Miezio* (1968), 103 Ill. App. 2d 398, 242 N.E.2d 795), have all been upheld.

Both Illinois and a number of other States have considered the question of whether an officer can stop an auto to ask for the driver's operator's license, even in the absence of any reason to believe that that particular driver did not have a valid license. Although based on different facts, these driver's license cases focus on the same basic constitutional questions involved in the instant case.

The reasonableness of searches and seizures depends upon a balance between the public's interest and the individual's right to freedom from arbitrary interference by law officers. (See *Terry v. Ohio.*) Some States have held the balance of public and private interests in this type of case to

be in favor of the State. Others feel that a random stop, even for a mere driver's license check, is too much interference.

The import of our own rulings in this area is not completely clear. In *People v. Francis* (1971), 4 Ill. App. 3d 65, 280 N.E.2d 49, we stated that routine spot checks for driver's licenses are constitutional provided they were not used as a subterfuge to search for evidence of some other crime. However, the facts in *Francis* are not particularly close to those in the instant case. Defendant there was not actually in his car parked by the side of the highway. His conviction for driving without a valid license was reversed because of no proof that he had actually been driving. Subsequently, in *People v. James* (1976), 44 Ill. App. 3d 300, 358 N.E.2d 88, we affirmed the suppression of evidence after an officer had stopped a vehicle to "check out the car and find out what the occupants were doing." We stated that the forcible stop of a motorist was permissible only when,

> "* * * the officer is able to point to specific and articulable facts which when taken together with rational inferences reasonably warrant suspicion that a crime is being committed, has been committed, or is about to be committed. This requirement is deemed necessary to prevent the police from having absolute discretion to intrude into the lives of the occupants of motor vehicles. To permit such discretion would tend to preclude judicial review of the actions of police and remove a buffer which has traditionally existed between the citizen and the police officer."

*People v. James* (1976), 44 Ill. App. 3d 300, 303, 358 N.E.2d 88, 91.

If the language in *Francis* is followed, an Illinois officer can stop an auto, either because of a reasonable inference of an offense, or to do a spot check of a driver's license. If, however, the language in *James* controls, as a more recent statement of policy, there must be a reasonable inference of an offense to stop an auto, with no exception for checks of driver's licenses.

The United States Supreme Court has not yet commented directly on this issue. It has held that both systematic checkpoint stops and spot checks to search for illegal aliens are unconstitutional without reasonable grounds to believe that an offense has been committed (*United States v. Ortiz* (1975), 422 U.S. 891, 45 L. Ed. 2d 623, 95 S. Ct. 2585), but has specifically distinguished license and vehicle checks from such investigations by the Border Patrol (*United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 883 n.8, 45 L. Ed. 2d 607, 618 n.8, 95 S. Ct. 2574, 2581 n.8; *United States v. Ortiz* (1975), 422 U.S. 891, 897 n.3, 45 L. Ed. 2d 623, 629 n.3, 95 S. Ct. 2585, 2589 n.3). Although a number of States have disagreed on the constitutionality of driver's license stops (see generally Note, *Automobile License Checks and the Fourth Amendment*, 60

Va. L. Rev. 666 (1974)), their disagreements have focused on spot rather than systematic checks. New York, Pennsylvania, the United States Court of Appeals for the District of Columbia and Delaware have all held that discretionary spot checks to ask for driver's licenses are unconstitutional but have specifically distinguished these discretionary spot stops from systematic roadblock stops like the one in the instant case. See *People v. Ingle* (1975), 36 N.Y.2d 413, 330 N.E.2d 39; *Commonwealth v. Swanger* (1973), 453 Pa. 107, 307 A.2d 875; *United States v. Montgomery* (D.C. App. 1977), 561 F.2d 875; *State v. Prouse* (Del. 1978), 382 A.2d 1359.

Nebraska, the District of Columbia, Texas and the United States Eighth Circuit Court of Appeals have held that discretionary spot checks are constitutional so long as they are not used as a subterfuge for some other investigation. (*State v. Holmberg* (1975), 194 Neb. 337, 231 N.W.2d 672; *Palmore v. United States* (D.C. App. 1972), 290 A.2d 573, *aff'd on jurisdictional grounds only* (1973), 411 U.S. 389, 36 L. Ed. 2d 342, 93 S. Ct. 1670; *Leonard v. State* (Tex. Crim. App. 1973), 496 S.W.2d 576; *United States v. Turner* (8th Cir. 1971), 442 F.2d 1146.) North Carolina and the United States Court of Appeals for the Fifth Circuit have apparently approved spot checks without any prohibition of the use of such checks as a subterfuge. *State v. Allen* (1973), 282 N.C. 503, 194 S.E.2d 9; *Myricks v. United States* (5th Cir. 1967), 370 F.2d 901.

The United States Supreme Court has recently granted *certiorari* in the Delaware case cited above (*Delaware v. Prouse*) and therefore, hopefully, will soon make a definitive ruling on the constitutionality of spot checks for driver's licenses. Mississippi, Kentucky, New Jersey, the District of Columbia and Florida have all ruled that roadblocklike, systematic checks for licenses are permissible. (*Morgan v. Town of Heidelberg* (1963), 246 Miss. 481, 150 So. 2d 512; *Commonwealth v. Mitchell* (Ky. 1962), 355 S.W.2d 686; *State v. Kabayama* (1967), 94 N.J. Super. 78, 226 A.2d 760; *Mincy v. District of Columbia* (D.C. App. 1966), 218 A.2d 507; *City of Miami v. Aronovitz* (Fla. 1959), 114 So. 2d 784.) More significantly, no State has ruled systematic checks to be unconstitutional. Thus, in contrast to the conflict as to spot checks, there appears to be a consensus that systematic checks for licenses are reasonable and not prohibited by the fourth amendment.

This distinction between spot and systematic checks is a logical consequence of the much greater discretion given the individual officer in a spot-check context. The States that have struck down spot checks have noted this discretion, as did the Delaware Supreme Court in *State v. Prouse* (Del. 1978), 382 A.2d 1359, 1364:

> "[T]he factor which in our opinion makes random stops, absent justifying facts, unreasonable is the inherent arbitrariness of the procedure. The flaw in the process is that absolute discretion in

authority is conferred upon the police to detain whomever they desire for whatever reason on the pretense of a documents check stop. Thus an officer prejudiced against any visibly identifiable group could stop a disproportional number of persons in the group."

The case before us does not involve a spot check; thus we need not determine the constitutionality of spot checks here.

Defendant attempts to distinguish the instant case from systematic driver's license checks by arguing that safety equipment violations, such as inoperative lights, are distinct from driving without a valid license because the former can be, and are, directly observed by officers without stopping the auto in question. Although it is true that in the course of their everyday duties police will discover cars without headlights, tail lights and other safety devices, and that these defects may be observed without stopping the car in question, it is apparent that a large number of these would be discovered only by a stop and subsequent inspection. Inoperable lights are usually not apparent in the daytime, turn signals not observable unless an auto is turning, and horn and tires never observable without stopping the auto in question.

Finally, defendant puts forth one argument on the constitutional question closely related to his argument on the question of authority under Illinois law. He contends that the absence of any statute requiring inspection of passenger autos and of any statute expressly giving police officers the right to inspect such autos indicates little or no State interest would be met by permitting the type of stop made in the instant case. We strongly disagree. The numerous statutory provisions requiring operable headlights, tail lights and other safety equipment, together with the State's obvious interest in keeping its highways safe for its citizens signify a strong State interest in requiring safety equipment. We agree with the following comments of the United States Court of Appeals for the Fifth Circuit in a driver's license case, at least as far as they pertain to systematic automobile checks.

"The Constitution is, it is often said, a living document. If it lives, it must take account of the dominant symbol of today's dynamic society. It must recognize, therefore, that [the State] has a legitimate interest in the roadworthiness of automobiles which transport, but which can maim and kill. [Citation.] This comprehends both technical fitness of the driver and the mechanical fitness of the machine. After the event it is always too late. The State can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness. That this requires a momentary stopping of the traveling citizen is not fatal. Nor is it because the

inspection may produce the irrefutable proof that the law has just been violated. The purpose of the check is to determine the present, not the past; *is* the car, *is* the driver now fit for further driving? In the accommodation of society's needs to the basic right of citizens to be free from disruption of unrestricted travel by police officers stopping cars in the hopes of uncovering the evidence of non-traffic crimes, [citations], the stopping for road checks is reasonable and therefore acceptable." (*Myricks v. United States* (5th Cir. 1967), 370 F.2d 901, 904.)

This strong State interest in preventing automobile accidents before they occur justifies at least systematic and undiscretionary brief stops of automobiles, whether to check the operator's license of the driver or the safety equipment of the automobile itself. For these reasons we hold such systematic, brief automobile stops to be constitutional.

The second major question before us is whether, irrespective of constitutional questions, the Illinois police are authorized by State law to establish checkpoints to stop cars for safety inspections. The State correctly points out that the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 12—101(a)), makes it unlawful for any person to drive any vehicle in unsafe condition or which is not equipped with proper equipment as required by State law. Other sections of the Vehicle Code delineate specific safety equipment which is required of all vehicles to be used on any highway in Illinois, including lighted lamps (par. 12—201), signal lamps and signal devices (par. 12—208), brakes (par. 12—301), tires (par. 12—401), mirrors (par. 12—502), unobstructed windshield (par. 12—503), and horns (par. 12—601). There is no question that police have the right, as well as the duty, to stop vehicles on the highway in which they observe in violation any of the above-cited statutory provisions.

Defendant argues that although the police have the duty to stop autos which are being operated in violation of the equipment statutes, they must have some knowledge amounting to at least a reasonable suspicion that a law is being violated if they are to make the stop.

Thus, the authorization question hinges upon whether the statutes concerning safety equipment imply a right of police officers to stop autos to inspect them for potential violations of those statutes.

Defendant makes two arguments in support of his contention that no such implied authority exists. The first is that criminal statutes do not normally carry with them a right of police to stop citizens in order to see if they have broken that statute.

Defendant cites no authority concerning this allegedly inherent limitation of police enforcement. Criminal statutes do contain an implied right of police to enforce them. While there are State and Federal constitutional limitations on the means of enforcement, these limits are

constitutional and not inherent in every criminal statute. The State has passed laws requiring safety equipment. Absent evidence of some contrary intent, the police should be able to enforce those laws in a constitutional manner.

Defendant also argues that there is, in fact, evidence of such contrary legislative intent. Calling attention to the existence of a detailed statutory inspection scheme for Second Class vehicles (trucks, busses, etc.) (see Ill. Rev. Stat. 1975, ch. 95½, pars. 1—217, 13—101 *et seq.*), defendant contends that the exclusion of standard passenger vehicles from this scheme indicates that the legislature did not intend that private autos be subject to inspections but that, rather, the equivalent statutes be enforced only as officers observed violations in the course of their other duties. Again, defendant cites neither legislative history nor case law in support of his contention.

A close examination of the inspection statutes for Second Class vehicles reveals that they are indeed comprehensive. Their very comprehensiveness weakens defendant's argument because the statutory inspections for Class Two vehicles place a burden on the State police as well as the owners of such vehicles. Section 13—103 provides for the licensing of official testing stations. Section 13—105 requires the State police to inspect all official testing stations "at frequent intervals." Section 13—107 requires the State police to investigate complaints about testing stations. To establish a similar testing scheme for the much greater number of Class One vehicles would place a significantly greater administrative and enforcement burden on the State police. A hesitancy to increase this burden and to require a shift of additional police resources to an auto inspection program seems to be the more logical explanation of the legislature's provision for Class Two but not for Class One vehicle inspections than any assumption that the legislature has less concern with the safety of Class One vehicles. We are loath to say that the State has anything but a strong interest in seeing that all motor vehicles are safe, and given the absence of any intent to provide otherwise, the safety equipment statutes carry with them an implied right for officers to inspect autos in any constitutional matter.

For the foregoing reasons, we reverse the trial court's grant of the motion to suppress and remand for further proceedings.

Reversed and remanded.

RECHENMACHER and WOODWARD, JJ., concur.