**NATIONAL PEOPLE'S ACTION, Plaintiff–Appellee,**

v.

**VILLAGE OF WILMETTE and Fred W. Stoecker, Defendants–Appellants.**

No. 89–3446.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1990.

Decided Oct. 3, 1990.

---

Edward A. Voci, Chicago, Ill., for plaintiff-appellee.

Anne Lorenz, Garr & Associates, Gregory E. Rogus, Segal, McCambridge, Singer & Mahoney, Chicago, Ill., Robert J. Mangler, Wilmette, Ill., for defendants-appellants.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

National People's Action (NPA) filed suit pursuant to 42 U.S.C. § 1983 against the Village of Wilmette (Village), challenging the constitutionality of the Village's registration ordinance regulating door-to-door solicitation. NPA sought money damages and an injunction against further enforcement of the ordinance. The district court denied NPA's motion for a preliminary injunction against the Village's prohibition of solicitors who have been convicted of a

felony within the previous five years, but the court granted NPA's motion for a preliminary injunction against the Village's requirement that prospective solicitors submit fingerprints on their application for registration. The appellants filed a timely notice of appeal. For the following reasons, we affirm.

## I

## BACKGROUND

### A. Procedural Posture

NPA's complaint alleged that section 5–5.3 of the Village of Wilmette Code (registration of solicitors) violated its first amendment free speech rights because the fingerprinting requirement discouraged its employee-solicitors from applying for a solicitation permit. In addition, the complaint alleged that the ordinance was overly broad in prohibiting the registration as a solicitor of any person who had been convicted of a felony within the previous five years.

The district court denied a preliminary injunction regarding the prohibition against the registration of felons. It granted a preliminary injunction regarding the fingerprinting requirement. The Village and Police Chief Stoecker appealed the grant of the preliminary injunction.[1] On November 17, 1989, the appellants moved in this court for an order staying the preliminary injunction. A motions panel of this court denied the stay on December 14, 1989.

### B. District Court Proceedings

The first witness at the hearing on the preliminary injunction was Fred Stoecker, the chief of police for the Village. He testified that a prospective solicitor was required to submit a registration application and to be fingerprinted in the lobby of the police station.[2] Chief Stoecker acknowledged that the fingerprints on the registration form (as opposed to special fingerprint cards) could not be used for

---

1. NPA does not appeal the denial of a preliminary injunction on the five year felon restriction, and thus we shall not consider that issue.

2. There was a room outside the view of the general public for use in taking the fingerprints of suspects.

classification purposes. Upon questioning by the court, Chief Stoecker testified that the fingerprinting requirement served two purposes: to use for comparison purposes in the event a solicitor is suspected in a crime, and to receive more accurate information on the registration form. When the court asked Chief Stoecker to clarify the latter purpose, the following colloquy ensued:

Q. [by the court] What is the basis for your belief that if fingerprints are required on that form the information that you get from the person seeking to be a solicitor in your town will be more accurate?

A. We have had many occasions when we are asked for applications and they are sent in, information is sent in, and once solicitors come into the building and see the process they leave.

Q. So that is the basis for that belief?

A. Yes.

Tr. of Feb. 23, 1989 at 18.

The court also received testimony from Frederick Clauser, the deputy chief of police, who stated that he was unaware of any occasion in which the fingerprints on the registration forms were used to confirm that a solicitor had committed a crime, although he believed that it would be feasible to use the fingerprints in that manner.[3] Finally, several NPA solicitors testified that they refused to give fingerprints at the police station because the process was associated with having committed a crime. Rather than be fingerprinted, the solicitors chose not to solicit in Wilmette.

On November 2, 1989, the district court issued oral findings of fact in support of its decision to grant a preliminary injunction. The court summarized its conclusion as follows: "The Court is not convinced that the requirement serves any useful purpose and, further, it finds it significantly deters qualified solicitors from coming into the village." Tr. of Nov. 2, 1989 at 6. In addition, the court found that the evidence

at the hearing indicated that the fingerprints were not used to check identification, and that the Village had other means available to check if the applicants had a criminal record. With respect to the use of the fingerprints in later criminal investigations, the court concluded:

The only possible use of these prints for a legitimate government purpose might be in solving a crime where latent prints were found at the scene, however, because of the way the prints are taken such use here is problematic. Further, the evidence does not reflect that this has ever happened in Wilmette.

We conclude that the village fingerprint requirement at best only slightly serves some kind of a government interest, that it has the effect of chilling proper solicitation, and in fact is used by Wilmette for that very purpose.

*Id.* at 7.

## II

## ANALYSIS

A. *The Applicable Standards*

1.

The standards that apply to a grant of a preliminary injunction are well established. Initially, the district court must consider a number of factors in deciding whether to grant a preliminary injunction:

Before a preliminary injunction will issue, the movant must show, as a threshold matter, that: (1) they have no adequate remedy at law; (2) they will suffer irreparable harm if the injunction is not granted; and (3) they have *some* likelihood of success on the merits in the sense that their "chances are better than negligible." *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 386–87 (7th Cir.1984); *see also Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1433 (7th Cir.1986). If the movant can meet this threshold burden, the in-

---

3. Although Chief Stoecker originally stated during his testimony that the fingerprints had been used in burglary investigations, Tr. of Feb. 23, 1989 at 18–19, he admitted on further examination that that statement might be inaccurate: "I

might have been inaccurate in saying that we use the prints for comparisons. More accurately, I would say that we found that solicitors were involved in burglaries in the community on two occasions." *Id.* at 19.

quiry then becomes a "sliding scale" analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits.

*Ping v. National Educ. Ass'n,* 870 F.2d 1369, 1371 (7th Cir.1989) (emphasis in original).

The standard that we apply to review the district court's determination is "tailored to the various functions that the district court must perform in fulfillment of its responsibilities." *Thornton v. Barnes,* 890 F.2d 1380, 1384 (7th Cir.1989). This court summarized this review as follows:

[T]he preliminary injunction decision involves the resolution of a number of different issues, some of which are non-discretionary; others, like the final weighing and balancing of the equities, are classically left to the discretion of the district judge. Appellate review therefore must vary with the nature of the lower court decision. When a court of appeals considers a preliminary injunction order, which should set forth the judge's reasoning under Fed.R.Civ.P. 65(d), the factual determinations are reviewed under a clearly erroneous standard and the necessary legal conclusions are given *de novo* review. *SEC v. Suter,* 732 F.2d 1294, 1300 (7th Cir.1984); *E. Remy Martin & Co. v. Shaw–Ross International Imports,* 756 F.2d 1525, 1529 (11th Cir.1985). However, the ultimate evaluation and balancing of the equitable factors is a highly discretionary decision and one to which this court must give substantial deference. The variance in the standard of review expressed in *Roland* may, in part, be attributed to the existence of errors of law or fact. Clearly, a factual or legal error may alone be sufficient to establish that the court "abused its discretion" in making its final determination.

*Lawson Prods., Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1437 (7th Cir.1986); *see also Somerset House, Inc. v. Turnock,* 900 F.2d 1012, 1014 (7th Cir.1990) (factual determinations reviewed on abuse of discretion standard). Based on these standards, " ' "our review is limited to determining

'whether the judge exceeded the bounds of permissible choice in the circumstances, not what we would have done if we had been in his shoes.' " ' " *Thornton,* 890 F.2d at 1385 (quoting *International Kennel Club, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1084 (7th Cir.1988) (quoting *A.J. Canfield Co. v. Vess Beverages, Inc.,* 796 F.2d 903, 906 (7th Cir.1986) (quoting *Roland Mach. Co. v. Dresser Indus.,* 749 F.2d 380, 390 (7th Cir.1984)))); *see also Cox v. City of Chicago,* 868 F.2d 217, 219 (7th Cir.1989) (review of grant or denial of preliminary injunction is under abuse of discretion standard); *David K. v. Lane,* 839 F.2d 1265, 1271 (7th Cir.1988) (deferential standard of review).

2.

An ordinance that regulates first amendment activity must be "narrowly drawn." *Village of Schaumberg v. Citizens for a Better Env't,* 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980); *Hynes v. Mayor of Oradell,* 425 U.S. 610, 617, 96 S.Ct. 1755, 1759, 48 L.Ed.2d 243 (1976). Also, the ordinance must be designed not to "unnecessarily interfer[e] with First Amendment freedoms." *Schaumberg,* 444 U.S. at 637, 100 S.Ct. at 836. " 'Precision of regulation must be the touchstone....' " *Id.* (quoting *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963)).

The Supreme Court, in *dicta,* has approved the use of identification devices as a requirement for receiving a solicitation permit. *See Martin v. City of Struthers,* 319 U.S. 141, 148, 63 S.Ct. 862, 866, 87 L.Ed. 1313 (1943); *Cantwell v. Connecticut,* 310 U.S. 296, 306, 60 S.Ct. 900, 904, 84 L.Ed. 1213 (1940); *see also Hynes,* 425 U.S. at 618, 96 S.Ct. at 1759. This regulation is allowed because of the legitimate interests of the state to protect its citizens from criminal elements and unwanted disruptions at home. *Hynes,* 425 U.S. at 618, 96 S.Ct. at 1759; *Martin,* 319 U.S. at 148, 63 S.Ct. at 866. Finding the proper means to control solicitation is a problem that "must be worked out by each community for itself with due respect for the constitutional

rights of those desiring to distribute literature and those desiring to receive it, as well as those who choose to exclude such distributers from the home." *Martin,* 319 U.S. at 148–49, 63 S.Ct. at 866. Nevertheless, such restrictions on expression must be content-neutral and "narrowly tailored to serve a significant governmental interest," and they must "leave open ample alternative channels for communication of the information." *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984); *see also Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 808, 812, 104 S.Ct. 2118, 2130, 2132, 80 L.Ed.2d 772 (1984). In applying this standard, it must be remembered that the Supreme Court has reaffirmed—emphatically—"that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate content-neutral interests but that it need not be the least-restrictive or least-intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward v. Rock Against Racism,* — U.S. —, 109 S.Ct. 2746, 2757–58, 105 L.Ed.2d 661 (1989) (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985)) (footnote omitted).

### B. *Application to This Case*

The parties in this case mainly dispute one of the elements necessary to support a preliminary injunction: NPA's likelihood of success on the merits. NPA charges that the fingerprinting requirement unnecessarily impedes its first amendment freedom of speech, as applied to the states by the fourteenth amendment,[4] because it is intended to discourage applicants for solicitation permits. NPA contends that the ordinance does not serve a legitimate governmental objective because there is no evidence that the required fingerprinting deters criminal conduct or would significantly

aid investigations of future criminal conduct. With respect to the latter point, NPA points out that, even if identifying criminals is a legitimate goal, the fingerprinting in this case is ineffective in achieving that goal because of the nonprofessional manner in which the fingerprints are taken. NPA concludes that the ordinance is not narrowly tailored because "sufficient, narrower, and less stigmatizing means of corroborating the identity of solicitors and deterring criminal behavior," Appellee's Br. at 23, are available and indeed have been used by the Village. Moreover, the Village allows citizens to place "no solicitor" signs on their door to deter criminals posing as solicitors.

The record before the district court amply supports its determination that the plaintiff established a probability of success on the merits. First, the court, which was permitted to make credibility determinations, concluded that the fingerprints, as taken by the Village, "really cannot be used to check for criminal records and the village does not try to do that." Tr. of Nov. 2, 1989 at 6. In short, *on the record before it,* the district court was entitled to conclude that the fingerprinting requirement served little or no legitimate governmental purpose. The only possible use of the fingerprints was to assist the authorities in later criminal investigations. However, the district court found specifically that the use of the fingerprints for this purpose was "problematic," *id.* at 7, because of the manner in which the prints were taken. Furthermore, the court concluded that "the evidence does not reflect" that the prints were ever used for such a purpose in Wilmette. *Id.* Accordingly, we cannot say, as *Ward* requires, that the "'regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward,* 109 S.Ct. at 2758 (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985)).

---

**4.** *See Gitlow v. New York,* 268 U.S. 652, 666, 45      S.Ct. 625, 630, 69 L.Ed. 1138 (1925).

Moreover, the district court emphasized that the fingerprinting procedure also affirmatively discourages protected activity: [5]

Indeed, in an effort to justify the fingerprinting the chief of police stated in response to a question by this Court that the only tangible benefit he saw from the fingerprinting was that it discouraged solicitors and that many left the village rather than comply with the requirement. Tr. of Nov. 2, 1989 at 6–7. The district court's conclusion as to the true purpose and effect of the fingerprinting requirement is substantiated by the fact that, although the fingerprinting procedure was of no help in checking criminal records, such a check was easily possible through other means.

The appellants also contest—in a rather conclusory and superficial manner—the other elements necessary to support a preliminary injunction. The appellants claim that NPA will not suffer irreparable harm because the group can solicit in all the other cities and villages in Illinois. We reject this argument. The harm created by restricting the prospective solicitors' right of expression in Wilmette cannot be cured by pointing to other municipalities that do allow free exercise of speech. Even a temporary deprivation of first amendment freedom of expression rights is generally sufficient to prove irreparable harm. *See Citizens for a Better Env't v. City of Park Ridge*, 567 F.2d 689, 691 (7th Cir.1975); *Schnell v. City of Chicago*, 407 F.2d 1084, 1086 (7th Cir.1969); *see also* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948 at 440 (1973); *cf. Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120–21, 14 L.Ed.2d 22 (1965) (allegation of impairment to freedom of expression demonstrated an irreparable injury); *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1018 (7th Cir.1990) (allegation of first amendment violation supports finding of irreparable injury). The district court found that the fingerprinting requirement inhibited protected speech in Wilmette by discouraging prospective solicitors from filling out the required registration form. This finding is not clearly erroneous and does support a conclusion of irreparable harm.

The appellants also assert that NPA has an adequate remedy at law because there would be a full hearing in the future. But injunctions are especially appropriate in the context of first amendment violations because of the inadequacy of money damages. *See generally Flower Cab Co. v. Petitte*, 685 F.2d 192, 195 (7th Cir.1982) ("In [first amendment] cases the quantification of injury is difficult and damages are therefore not an adequate remedy.").

Finally, the appellants assert that the harm that the Village would suffer outweighs the harm to NPA, because of the harm that a criminal can inflict should one obtain a solicitor's permit. This argument ignores the district court's finding that the fingerprints are not used to check criminal records and that the Village has other means that it currently uses to check the records. As we have noted, the district court's finding that the fingerprinting requirement does not serve to deter crime is not clearly erroneous.

Based on the record before us, we conclude that the district court did not err in granting a preliminary injunction.

### Conclusion

The judgment of the district court is affirmed.

AFFIRMED.

---

5. The Third Circuit dealt with a similar fingerprinting requirement in *New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250 (3d Cir.1986), *cert. denied*, 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 186 (1987). After reviewing the Supreme Court precedent; *id.* at 1263–65, the court concluded that there was not a substantial relationship between the fingerprinting and an important state interest. *Id.* at 1265. The court noted that the fingerprints would assist in the apprehension of a canvasser who commits a crime, but determined that the city had not shown a relationship between canvassers and criminal behavior. *Id.*