**Mark PRATT, Easter Redman, Ethel Washington and Barbara Moore, Plaintiffs,**

v.

**The CHICAGO HOUSING AUTHORITY, Defendant.**

and

**Everett Alexander, Mary Baldwin, Deverra Beverly, Mamie Bone, Louis Brown, Hattie Calvin, Annie Davis, Beverly Dorsey, Helen Finner, Beatrice Harris, Myra King, Jerome Price, Artensa Randolph, Charles Reynolds, Dorothy Shelton, Esther Wheeler, Gloria Williams, Julia Wimms, Defendant–Intervenors.**

**No. 93 C 6985.**

United States District Court, N.D. Illinois, E.D.

April 7, 1994.

Harvey Grossman, Patricia Mendoza, Rocio L. Cordoba, The Roger Baldwin Foundation of ACLU, Inc., Chicago, IL.

James J. Casey, Bradford T. Yaker, Keck Mahin & Cate, Chicago, IL.

Sharon A. Wildey, Sharon A. Wildey & Associates, Chicago, IL.

Edward W. Feldman, James P. Bailinson, Miller, Shakman, Hamilton, Kurtzon and Schlifke, Chicago, IL.

Thomas P. Sullivan, Michael R. Pace, Jenner & Block, Chicago, IL.

## PRELIMINARY INJUNCTION ORDER

ANDERSEN, District Judge.

Plaintiffs Mark Pratt, Easter Redman, Ethel Washington and Barbara Moore have brought this action on behalf of all tenants and lawful residents of property owned and operated by defendant Chicago Housing Authority ("CHA"). Plaintiffs' complaint is a civil rights action for declaratory and injunctive relief arising under 42 U.S.C. §§ 1983, 1988, and 28 U.S.C. §§ 2201, et seq., due to defendant's alleged violations of the tenants' rights guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States. Defendant-intervenors are CHA residents who are Local Advisory Council ("LAC") Presidents for eighteen of the nineteen CHA developments and who contend that the CHA's policy and practice as described in the complaint does not violate the Fourth Amendment. Each CHA development has a LAC and LAC members and presidents are elected by each development's residents. The LAC Presidents, in turn, comprise the CHA Central Advisory Council ("CAC"), representing CHA residents from all CHA developments. The CAC adopted a resolution on February 14, 1994 indicating its official support for the CHA's searches and sweeps and authorizing the representation of counsel to pursue the intervenors' interest in this case.

On February 14, 1994, this court granted plaintiffs' request for a temporary restraining order. Plaintiffs now seek to convert the temporary restraining order into a preliminary injunction. Based on the pleadings, affidavits, testimony and arguments submitted to the court, the plaintiffs' motion for a preliminary injunction is granted for the following reasons.

### I. BACKGROUND

The CHA is an Illinois municipal corporation and a duly authorized housing authority of the State of Illinois created and existing under the Illinois Housing Authorities Act, 310 ILCS 10/1, et seq. Its police department has "all powers possessed by the police of cities, and sheriffs" pursuant to Section 8.1a of that Act. 310 ILCS 10/8.1a. Beginning in the summer of 1993, the CHA ordered its police department to "sweep" twelve residential buildings. Those "sweeps" took place on four different dates. The sweeps included searches of all residential units located within the buildings. The sweeps were conducted by searching entire apartment units, including closets, drawers, refrigerators, cabinets and personal effects. The normal procedure of obtaining search warrants from a judge was not attempted, so all searches were without court sanction. The sweeps themselves, due to the logistical difficulties of coordinating sufficient police to search properly, normally took place several days after the emergency circumstances arose and never occurred earlier than forty-eight hours after the alleged criminal activity. Although the CHA obtained consent to search from many tenants, it concedes that consent was not obtained from some tenants, such as those

who were not home when the searches occurred.

The sweeps were explicitly authorized and directed by Vincent Lane, acting in his capacity as Chairman of the Board of Commissioners of the CHA, when he determined that the appropriate preconditions for a sweep had been met. Those preconditions include random gunfire from building to building and/or intimidation at gunpoint or by shooting if weapons were taken into buildings. If CHA police officers could not ascertain into which apartments weapons had been taken, they would request that a sweep be authorized. The most notorious instance triggering a sweep was random gunfire threatening the lives of workers installing window guards on buildings at the Robert Taylor homes.

Although no written policy has been adopted by the CHA, the CHA has advised the court that it intends to order these sweeps if the appropriate preconditions exist in the future. The CHA has defined these preconditions and the subsequent sweeps as its "Search Policy." The court, the plaintiffs and the intervenors accept this definition of "Search Policy."

It is this Search Policy that the plaintiffs seek to enjoin in the case of *Pratt, et al. v. CHA*, 93 C 6985, 1994 WL 168252 (N.D.Ill. 1994). Plaintiffs contend that searches conducted pursuant to the Search Policy violate the Fourth Amendment's constitutional guarantee against unreasonable search and seizure. The common denominator of the events triggering implementation of the Search Policy is the perceived need to respond on a dramatic basis to criminal activity which threatens the lives and safety of innocent persons in and around the CHA buildings.

Plaintiffs in the *Pratt* case do not seek to limit CHA actions taken pursuant to the Consent Decree entered in the related case of *Summeries, et al. v. CHA*, 88 C 10566. Searches authorized by the *Summeries* decree are not in response to particular criminal activity. The *Summeries* case was brought by CHA tenants alleging constitutional violations in connection with (1) emergency housing inspections of CHA properties by CHA and the City of Chicago Police Department, and (2) CHA's policy regarding visitors and guests to CHA properties which have been inspected and secured. Since the entry of the *Summeries* Consent Decree, the CHA has conducted numerous housing inspections at buildings throughout its system in order to identify and remove unauthorized occupants, inspect the condition of apartment units, distribute resident identification cards and secure the entranceways to the buildings. The CHA personnel and police officers are not allowed to search drawers, closets or personal effects under the *Summeries* Consent Decree.

## II. DISCUSSION

In order to grant a preliminary injunction, the court must find that: (1) the plaintiffs have at least a reasonable likelihood of success on the merits; (2) plaintiffs have no adequate remedy at law and will be irreparably injured if the defendants are not enjoined; (3) the balance of hardships favors granting the preliminary injunction; and (4) the public interest will not be disserved if the injunction is granted. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 214 (7th Cir.1993); *Wesley–Jessen Div., Etc. v. Bausch & Lomb, Inc.*, 698 F.2d 862, 865 (7th Cir.1983). Plaintiffs have the burden of proving each of these factors. *Roland v. Air Line Employees Ass'n, Int'l*, 753 F.2d 1385, 1392 (7th Cir.1985). In this case, the court is satisfied that plaintiffs have carried their burden of demonstrating that the circumstances meet each of the four requirements.

### A. Likelihood of Success

■ In this case, there is a reasonable likelihood that plaintiffs will succeed in proving that the CHA's Search Policy violates the requirements of the Fourth Amendment that non-consensual searches of a home for law-enforcement purposes be based in all cases upon probable cause, and that such searches be made pursuant to a warrant, except in cases of extreme immediate urgency known as "exigent circumstances." The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.[1] As the United States Supreme Court has stated:

The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." (citation omitted).

*Payton v. New York,* 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980). Thus, "the chief evil against which the [Fourth] amendment is directed is the physical entry of the home." *United States v. Berkowitz,* 927 F.2d 1376, 1385 (1991) *aff'd,* 972 F.2d 352 (7th Cir.1992). Accordingly, a warrantless police search inside a home is presumptively unconstitutional. *Payton,* 445 U.S. at 586, 100 S.Ct. at 1380; *Reardon v. Wroan,* 811 F.2d 1025, 1027 (7th Cir.1987).

■ In order to overcome the presumption that a warrantless search of a home is unconstitutional, the defendant must show that it had both probable cause for the search and exigent circumstances that excuse

its failure to obtain the warrant. *See, e.g., Reardon,* 811 F.2d at 1028. Exigent circumstances alone cannot suffice. *See, e.g., Payton,* 445 U.S. at 588–89, 100 S.Ct. at 1381–82; *Reardon,* 811 F.2d at 1028; *United States v. Paul,* 808 F.2d 645, 647 (7th Cir.1986).

In this case, the fundamental requirement of probable cause is fatal to the Search Policy because the Search Policy actually orders searches where there is no probable cause to believe that a search of any particular apartment will prevent the commission of a crime, unveil evidence of a crime, or lead to an arrest. The testimony demonstrated that numerous apartments were searched even though the CHA had no reason to suspect that the tenants or lawful residents of that particular apartment had committed a crime.

The CHA argues that exigent circumstances exist which justify its search of every apartment in a building. However, based upon the evidence presented to this court, we find that exigent circumstances did not exist when the twelve searches at issue in this case were conducted. The sweeps usually took place several days after the shooting activity and in no instance occurred within forty-eight hours after the gunfire.

Moreover, even when they exist, exigent circumstances do not erase the additional prerequisite of probable cause. Without any probable cause for searching particular apartments, the searches under the Search Policy are unconstitutional, no matter how exigent the circumstances. *See Arizona v. Hicks,* 480 U.S. 321, 327, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987); *United States v. Howard,* 828 F.2d 552, 555 (9th Cir.1987).

■ Search warrants are invalid if they authorize searches of multiple units in an

---

1. The Illinois Constitution of 1970 contains a parallel provision which provides:

The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized.

Ill. Const., art. I, § 6. This provision has been held to be coextensive with the scope of the constitutional proscription of unreasonable searches and seizures contained in the Fourth Amendment to the United States Constitution. *See, e.g., People v. Reincke,* 84 Ill.App.3d 222, 39 Ill.Dec. 677, 405 N.E.2d 430 (5th Dist.1980); *People v. Estrada,* 68 Ill.App.3d 272, 24 Ill.Dec. 924, 386 N.E.2d 128 (2d Dist.1979). Although plaintiffs have not brought suit under the Illinois Constitution, the CHA's Search Policy also violates Article I, § 6 of the Illinois Constitution.

apartment building or hotel, without probable cause to support the search of each of the units. "Federal courts long have held that police officers, before they constitutionally may search a separate residential unit within an apartment building, must have probable cause to do so that is specifically related to that unit." *United States v. Dorsey*, 591 F.2d 922, 928 (D.C.Cir.1978). As the Seventh Circuit has held:

> For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses. Probable cause must be shown for searching each house or, in this case, each apartment.... [P]robable cause must be shown for searching each residence unless it be shown that, although appearing to be a building of several apartments, the entire building is actually being used as a single unit.

*United States v. Higgins*, 428 F.2d 232, 235 (7th Cir.1970).

In sum, an overwhelming body of law demonstrates a substantial likelihood that the Search Policy violates the Fourth Amendment. Thus, there is enough likelihood of success to warrant the issuance of a preliminary injunction.

### B. *Irreparable Harm*

■ The tenants and lawful residents will be irreparably injured if the Search Policy is not enjoined because they will be subject to having their apartments searched without warrants, without their consent, and without probable cause justifying the search. Violations of constitutional rights, including the Fourth Amendment, suffice to prove irreparable injury and inadequacy of remedy at law for purposes of injunctive relief. *See, e.g., National People's Action v. Village of Wilmette*, 914 F.2d 1008, 1013 (7th Cir.1990).

### C. *Balance of Hardships*

■ The balance of hardships favors granting the preliminary injunction. Because the court finds that the possibility of warrantless home searches without consent and the potential for the violation of constitutional rights outweighs the enhanced safety that those searches might bring, a balancing of hardships favors granting the preliminary injunction. The testimony has shown that the searches conducted pursuant to the Search Policy are an ineffective means to secure long-term safety in the CHA developments. Because the CHA lacks the resources necessary to provide security at building entrances or to patrol common areas in and around buildings, the implementation of the Search Policy has created a chaotic invasion of privacy without any chance of effecting a long-term reduction of criminal activity.

### D. *Public Interest*

■ The public interest would not be disserved by granting the preliminary injunction. The public has a powerful interest in the maintenance of constitutional rights, particularly the right to be secure in one's home from unconstitutional invasions by the government. *See, e.g., O'Brien v. Town of Caledonia*, 748 F.2d 403, 408 (7th Cir.1984).

### CONCLUSION

This Court is asked to sanction warrantless searches, without consent, of the homes of CHA residents.

The government officials who are responsible for maintaining safe conditions in public housing find themselves without adequate resources to do the job right. CHA Chairman Vincent Lane, who has said that he would rather be "damned if I do than if I do not," cannot do nothing while conditions deteriorate.

Many tenants within CHA housing, apparently convinced by sad experience that the larger community will not provide normal law enforcement services to them, are prepared to forgo their own constitutional rights. They apparently want this court to suspend their neighbors' rights as well.

Finally, many Americans are simply fed up with crime. Although they would not dream of allowing police to search their own homes without their consent or without warrants, they support police sweeps of inner city neighborhoods.

The decision of this Court is guided by several principles:

First, I am sworn to uphold and defend the Constitution, not to use the power of this office to override it, amend it or subvert it.

Second, all Americans are bound together in law and in fact. The erosion of the rights of people on the other side of town will ultimately undermine the rights of each of us.

Third, this Court has confidence that the government officials charged with providing safe housing will do the job effectively and within Constitutional restraints. Chairman Lane is intelligent, aggressive and charismatic. Citizens of Chicago are blessed with a large, well-trained police force led by dedicated professionals. Supporting both the CHA and the Chicago Police Department is an enlightened Mayor who has demonstrated an ability to tackle problems that would undue lesser politicians.

Finally, this Court has faith that parents and grandparents living in and around CHA housing will reclaim their families and restore to their children self respect and respect for other human beings. If they do, government efforts will succeed; if they do not, all efforts of government, whether within or without constitutional restraints, will fail.

IT IS THEREFORE ORDERED THAT the CHA, its agents, employees, and all those acting in concert with it, are enjoined from implementing its Search Policy under which the CHA conducts warrantless searches of apartments without resident consent. Nothing in this order is intended to enjoin the CHA, its agents, employees, and all those acting in concert with it from:

1. conducting searches pursuant to valid search warrants;

2. conducting searches pursuant to resident consent, either oral or written;

3. conducting searches in common areas throughout CHA buildings and in space not leased to tenants;

4. conducting searches in response to an existing emergency or clear and present danger when there is probable cause to believe that a crime has been committed;[2]

5. conducting searches pursuant to the Consent Decree entered in the related case of *Summeries, et al. v. CHA,* 88 C 10566; or

6. conducting searches reasonably required to assure the safety of any individual or law enforcement officer while law enforcement officers or CHA administrative personnel are engaged in a lawful search.

For the reasons stated above, plaintiffs' motion for a preliminary injunction is granted. Because plaintiffs are indigent and because wrongful entry of a preliminary injunction will cause the CHA no monetary injury, bond is hereby waived.

2. If, for example, an armed gang engaged in shooting enters a building which is then promptly surrounded, a door-to-door search which begins immediately thereafter, is appropriate to apprehend the criminals and restore safe conditions. The key factors are the timeliness of the response by the police and the probability of valid arrests and weapon confiscation. While beginning the search, time permitting, a search warrant should be requested.